[Cite as *Ohio Neighborhood Fin. Inc. v. Scott*, 2012-Ohio-5566.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | |
|---|---|
| OHIO NEIGHBORHOOD FINANCE, INC. | C.A. No.     11CA010030 |
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| RODNEY SCOTT | ELYRIA MUNICIPAL COURT COUNTY OF LORAIN, OHIO |
| Appellee | CASE No.     09CVF01488 |

DECISION AND JOURNAL ENTRY

Dated: December 3, 2012

---

BELFANCE, Judge.

{¶1}   Ohio Neighborhood Finance, Inc., doing business as Cashland, appeals the judgment of the Elyria Municipal Court.  For the reasons set forth below, we affirm.

I.

{¶2}   On December 5, 2008, Cashland agreed to loan Mr. Scott $500.  The Customer Agreement signed by Mr. Scott set forth the "Payment Schedule" as "[o]ne payment in the amount of $545.16 due on 12/19/08 (Payment Date)."  On May 28, 2009, Cashland filed a complaint against Mr. Scott, alleging that he had not repaid the loan.  It sought a judgment of $570.16 against Mr. Scott along with 25% yearly interest.

{¶3}   Mr. Scott did not respond to Cashland's complaint, and Cashland moved for default judgment.  Following a hearing, the magistrate issued a decision, recommending that Cashland was only entitled to a judgment of $465 at 8% annual interest because the loan failed to comply with the Ohio Mortgage Loan Act by issuing a loan not permitted by the Act.  Cashland

objected to the magistrate's decision, but the trial court overruled its objections and entered the judgment recommended by the magistrate.

{¶4} Cashland has appealed, raising two assignments of error. Because the assignments of error are related, we address them together.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DETERMINING THAT THE OHIO MORTGAGE LOAN ACT ("MLA"), R.C. 1321.51, ET SEQ., DOES NOT APPLY TO THE LOAN AT ISSUE, AND THAT CASHLAND IS BARRED FROM COLLECTING INTEREST AND FEES ON THE LOAN AS AVAILABLE UNDER THE MLA.

ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR DETERMINING THAT CASHLAND VIOLATED THE OHIO MORTGAGE LOAN ACT ("MLA"), R.C. 1321.51, ET SEQ.

{¶5} Cashland argues the trial court erred when it overruled Cashland's objections to the magistrate's decision. According to Cashland, the loan in this case was permitted under the Ohio Mortgage Loan Act. Therefore, because Cashland is a registrant, it argues, it was entitled to charge the fees and rate of interest allowed by the Act. We disagree.

{¶6} This is a case of statutory interpretation, which we review de novo. "In determining how to apply a statute, our paramount concern is the legislative intent in enacting the statute. In determining legislative intent, the court first reviews the applicable statutory language and the purpose to be accomplished. In doing so, we must give effect to every word and clause in the statute." (Internal quotations and citation omitted.) *In re Estate of Centorbi*, 129 Ohio St.3d 78, 2011-Ohio-2267, ¶ 12. If a statute's language is clear and unambiguous, it is applied as written. *Id*. at ¶ 14. "Ambiguity exists if the language of the statute is susceptible of

more than one reasonable interpretation." *Bailey v. Republic Engineered Steels, Inc.*, 91 Ohio St.3d 38, 40 (2001).

**{¶7}** The Ohio Mortgage Loan Act is codified in R.C. 1321.51 et seq. R.C. 1321.57(A) provides that,

> [n]otwithstanding any other provisions of the Revised Code, a registrant [under the Ohio Mortgage Loan Act] may contract for and receive interest, calculated according to the actuarial method, at a rate or rates not exceeding twenty-one per cent per year on the unpaid principal balances of the loan. Loans may be interest-bearing or precomputed.

There is no dispute that Cashland is a registrant under the Ohio Mortgage Loan Act. The issue in this case is whether the loan qualified as a permissible loan under the act. Cashland does not suggest that the loan in this case constituted a "precomputed loan" under the Ohio Mortgage Loan Act. *See* R.C. 1321.57(D)(1) (Precomputed loans "shall be repayable in monthly installments of principal and interest combined, except that the first installment period may exceed one month * * * and provided further that monthly installment payment dates may be omitted to accommodate borrowers with seasonal income."). Instead, it argues that Mr. Scott's loan was an "interest-bearing loan."

**{¶8}** An "'[i]nterest-bearing loan'" is "a loan in which the debt is expressed as the principal amount and interest is computed, charged, and collected on unpaid principal balances outstanding from time to time." R.C. 1321.51(F). According to Cashland, "from time to time" modifies "unpaid principal balances outstanding[,]" and, therefore, a loan could be interest-bearing even if it was collected in a single installment. However, "from time to time" could just as readily modify "computed, charged, and collected[,]" which would require interest to be collected in multiple installments. *See* R.C. 1321.51(F). In other words, the statute is ambiguous. *Bailey*, 91 Ohio St.3d at 40.

{¶9}    "In determining legislative intent when faced with an ambiguous statute, the court may consider several factors, including the object sought to be obtained, circumstances under which the statute was enacted, the legislative history, and the consequences of a particular construction." *Id*. *See also* R.C. 1.49. Furthermore,

> statutes which relate to the same general subject matter must be read in pari materia. And, in reading such statutes in pari materia, and construing them together, this court must give such a reasonable construction as to give the proper force and effect to each and all such statutes. The interpretation and application of statutes must be viewed in a manner to carry out the legislative intent of the sections. All provisions of the Revised Code bearing upon the same subject matter should be construed harmoniously. This court in the interpretation of related and co-existing statutes must harmonize and give full application to all such statutes unless they are irreconcilable and in hopeless conflict.

(Internal quotations, citations, and emphasis omitted.) *United Tel. Co. of Ohio v. Limbach*, 71 Ohio St.3d 369, 372 (1994). *See also* R.C. 1.47(B) ("[I]t is presumed that * * * [t]he entire statute is intended to be effective[.]").

{¶10}   At issue in this case is the interplay of two provisions of the Ohio Revised Code: the Short-Term Lender Law (R.C. 1321.35 et seq.) and the Ohio Mortgage Loan Act (R.C. 1321.51 et seq.). The General Assembly repealed the Check-Cashing Lender Law and enacted the Short-Term Lender Law in 2008. *See* Am.Sub.H.B. No. 545, 2008 Ohio Laws File 91. *See also* R.C. 1321.35-48. The Short-Term Lender Law contemplates a single payment loan and caps the total amount of a loan at $500. R.C. 1321.39(A). It also requires that the duration of the loan be not less than 31 days. R.C. 1321.39(B). Registrants under the Short-Term Lender Law are also prohibited from charging an interest rate higher than 28 percent or additional fees such as a loan initiation fee. R.C. 1321.40(A); R.C. 1321.41(C). By contrast, while registrants under the Ohio Mortgage Loan Act (R.C. 1321.51 et seq) cannot charge as high a rate of interest

as the licensees under the Short-Term Lender Law, they can charge additional fees, may make larger loans, and may secure loans with property. *See* R.C. 1321.57(G)-(J).

{¶11} Cashland argues that, as a registrant under the Ohio Mortgage Loan Act, it was permitted to issue the loan in this case because the Ohio Mortgage Loan Act permits single-payment loans. However, to construe R.C. 1321.51(F) and 1321.57(C)(1)(a) in the manner Cashland suggests would permit the registrants under the Ohio Mortgage Loan Act to issue the payday loans that Short-Term Lender Law seeks to regulate. Cashland suggests that the General Assembly intended to allow lenders to choose between the Short-Term Lender Law and the Ohio Mortgage Loan Act. If true, however, no payday lender will ever register under the Short-Term Lender law, and payday-loan lenders would be allowed to issue loans in greater amounts and shorter durations than allowed by the Short-Term Lender Law, all the while charging fees prohibited under the Short-Term Lender law. *See* R.C. 1321.39(A)-(B), 1321.41 (C). The effect would be to nullify the very legislation that is designed to regulate payday-type loans—a result at odds with the intent of the General Assembly.

{¶12} The General Assembly clearly intended the Short-Term Lender Law to proscribe the type of loan issued here, i.e. a loan that was to be repaid in full in two weeks. Thus, in considering the statutes in pari materia, we conclude that a loan is an interest-bearing loan under the Ohio Mortgage Loan Act only if interest is computed, charged, and collected from time to time. This reading is as logical and natural as the one suggested by Cashland but does not render the Short-Term Lender Law meaningless. *See* R.C. 1.47(B); *Limbach*, 71 Ohio St.3d at 372.

{¶13} Nevertheless, Cashland argues that the loan in this case was not a single-installment loan, noting that Mr. Scott could make multiple payments before the loan came due or, if he was unable to pay on time, he could "arrange for an extended payment plan, which

could involve multiple payments over time." However, the loan expressly set forth the "Payment Schedule" as "[o]ne payment in the amount of $545.16 * * *." By the terms of the loan, there was only one scheduled payment, and, therefore, interest was not being computed, charged, and *collected* from time to time. The fact that the loan did not prohibit multiple payments does not somehow alter the nature of the loan from a single-installment loan into a multiple-installment loan. *Russin v. Shepherd*, 11th Dist. No. 2006-G-2708, 2007-Ohio-3206, ¶ 55.

{¶14} Because the interest would be collected all at once, the loan in this case was not an interest-bearing loan as defined by the Ohio Mortgage Loan Act. *See* R.C. 1321.51(F). Nor did it qualify as a precomputed loan. *See* R.C. 1321.57(D). Thus, it was not a loan permitted by the Ohio Mortgage Loan Act, *see* R.C. 1321.57(A), and, therefore, Cashland was limited to an interest rate of eight percent per annum. R.C. 1343.01(A) ("The parties to a bond, bill, promissory note, or other instrument of writing for the forbearance or payment of money at any future time, may stipulate therein for the payment of interest upon the amount thereof at any rate not exceeding eight per cent per annum * * *.").

{¶15} Accordingly, the trial court did not err when it overruled Cashland's objections to the magistrate's decision. Cashland's assignments of error are overruled.

### III.

{¶16} Cashland's assignments of error are overruled, and the judgment of the Elyria Municipal Court is affirmed.

Judgment affirmed.

---

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Elyria Municipal Court, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

EVE V. BELFANCE
FOR THE COURT

MOORE, P. J.
CONCURS.

DICKINSON, J.
DISSENTING.

{¶17} The majority has correctly recognized that the disposition of this case hangs on whether the phrase "from time to time" in Section 1321.51(F) of the Ohio Revised Code refers to the interval at which interest must be "computed, charged, and collected" or whether it modifies the phrase "unpaid principal balances outstanding." R.C. 1321.51(F). If "from time to time" modifies "computed, charged, and collected," a loan is not an "[i]nterest-bearing loan" unless interest on the unpaid balance is computed from time to time, charged from time to time, and collected from time to time. If the phrase modifies "unpaid principal balances outstanding," an

"[i]nterest-bearing loan" is any loan in which interest accrues on a periodic basis, so long as that interest is computed, charged, and collected at some time. Under the second construction, all of the interest on a loan could be computed, charged, and collected at a single time as long as the computation was based on whatever the unpaid principal balance was at particular intervals.

{¶18} "When construing statutes, '[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage.'" *City of Lancaster v. Fairfield County Budget Comm'n*, 83 Ohio St. 3d 242, 244 (1998) (quoting R.C. 1.42). "Statutes and contracts should be read and understood according to the natural and most obvious import of the language, without resorting to subtle and forced constructions . . . ." *Id.* (quoting *Slingluff v. Weaver*, 66 Ohio St. 621, 627 (1902)). The most natural and obvious reading of Section 1321.51(F) is that the phrase "from time to time" modifies the words it immediately follows, which are "balances outstanding." Accordingly, if a loan "expresse[s] [the debt owed] as the principal amount" and computes, charges, and collects interest on whatever the principal balance is at particular intervals, it qualifies as an "[i]nterest-bearing loan" under Section 1321.51(F).

{¶19} The Customer Agreement identified the $500 that Neighborhood Finance loaned to Mr. Scott plus the loan origination charge and credit investigation fee as the "Principal Amount." It also indicated that Neighborhood Finance would compute on a daily basis the amount of interest that Neighborhood Finance would charge and collect from Mr. Scott based on the "principal balance outstanding" at the time of computation. It further explained that Mr. Scott could "reduce the amount of interest that will accrue" on the loan by prepaying some or all of the Principal Amount. The Agreement, therefore, satisfied the requirements of an interest-bearing loan under Section 1321.51(F).

**{¶20}** The municipal court reasoned that, because balances under an interest-bearing loan are expected to be outstanding from time to time, the definition of an interest-bearing loan was inconsistent with a single-payment loan. There is, however, no requirement under Section 1321.51(F) that the interest on an interest-bearing loan be collected from time to time. So long as the interest on a loan is calculated based on whatever the principal balance is from time to time: whether the calculation is made daily, weekly, monthly, or at some other interval, it is not material whether the loan is structured to be paid in a single installment or over multiple installments. *See also* R.C. 1321.57(C)(1)(a) ("With respect to interest-bearing loans . . . [i]nterest shall be computed on unpaid principal balances outstanding from time to time, for the time outstanding.").

**{¶21}** The municipal court also opined that the language of Section 1321.57(C)(1)(b) suggests that an interest-bearing loan requires multiple payments. Under 1321.57(C)(1)(b), "[a]s an alternative to the method of computing interest set forth in division (C)(1)(a) of this section, a registrant may charge and collect interest for the first installment period based on elapsed time from the date of the loan to the first scheduled payment due date, and for each succeeding installment period from the scheduled payment due date to the next scheduled payment due date, regardless of the date or dates the payments are actually made." The court reasoned that, because Section 1321.57(C)(1)(b) refers to installment periods, the legislature must have expected that interest-bearing loans would not be single-payment loans. The plain language of Section 1321.57(C)(1)(b) explains, however, that it is merely an alternative to Section 1321.57(C)(1)(a). Under Section 1321.57(C)(1)(a), "[i]nterest shall be computed [on an interest-bearing loan] on unpaid principal balances outstanding from time to time, for the time

outstanding." There is no language in Section 1321.57(C)(1)(a) that indicates that an interest-bearing loan cannot be a single-payment loan.

**{¶22}** The municipal court also pointed to Section 1321.57(C)(2)(a) to support its conclusion that an interest-bearing loan may not be a single-payment loan. Under Section 1321.57(C)(2)(a), "[i]nterest shall not be compounded, collected, or paid in advance. However, . . . [i]nterest may be charged to extend the first monthly installment period by not more than fifteen days, and the interest charged for the extension may be added to the principal amount of the loan." Just because Section 1321.57(C)(2)(a) contains language applying, on a discretionary basis, to loans with monthly installment periods, however, does not mean that all interest-bearing loans must have monthly installment periods.

**{¶23}** The municipal court also concluded that the Customer Agreement more closely resembled the definition of a precomputed loan. Under Section 1321.51(G), a "'[p]recomputed loan' means a loan in which the debt is a sum comprising the principal amount and the amount of interest computed in advance on the assumption that all scheduled payments will be made when due." While the Agreement did indicate the amount that it anticipated Mr. Scott "will have paid after [he had] made all payments as scheduled," it left open the possibility that he could pay the loan in advance and, thereby, "reduce the amount of interest that will accrue." The Agreement also did not include interest in its calculation of the "Principal Amount." Rather, the "Principal Amount" included only the $500 that Mr. Scott had financed plus a $30 loan origination charge and a $10 credit investigation fee. Under Section 1321.51(E), the definition of "[i]nterest" does not include "loan origination charges" or "other fees and charges specifically authorized by law." A fee for "credit investigations not exceeding ten dollars" is authorized under Section 1321.57(H)(1)(c).

**{¶24}** The municipal court also concluded that the Customer Agreement was not governed by the Ohio Mortgage Loan Act because it "look[ed] like" the type of loan formerly regulated under Ohio's Payday Loan Act and intended to be regulated under the more recent Short-Term Lender Act. Similarly, the majority has suggested that the General Assembly intended the Short-Term Lender Act to regulate this type of loan. Regardless of the intent of the General Assembly in replacing the Payday Loan Act with the Short-Term Lender Act, nothing in the Short-Term Lender Act prohibits a loan under the Mortgage Loan Act that satisfies the requirements of the Mortgage Loan Act. Although "[t]he general policy, the spirit and the reason of an act may properly be applied to reconcile conflicting or doubtful provisions of an act, [it] can not be permitted to override the effect of words of clear import." *Talbott v. State ex rel. Houston*, 5 Ohio App. 262, 269 (2d Dist. 1916). Section 1321.57(A) of the Ohio Revised Code specifically allows a registrant under the Mortgage Loan Act to enter into "precomputed" and "interest-bearing" loans and to receive interest in excess of the rate specified under Section 1343.01(A) if the loans meet the requirements of the act.

**{¶25}** The majority has ignored the plain language of Sections 1321.51 and 1321.57 of the Ohio Revised Code. I, therefore, dissent.

APPEARANCES:

DREW H. CAMPBELL and ANTHONY M. SHARETT, Attorneys at Law, for Appellant.

RODNEY SCOTT, pro se, Appellee.

KATHERINE B. HOLLINGSWORTH and JULIE K. ROBIE, Attorneys at Law, for The Legal Aid Society of Cleveland, The Legal Aid Society of Columbus, Community Legal Aid Services, Inc., Southeastern Ohio Legal Services, The Legal Aid Society of Southwest Ohio, LLC, Advocates for Basic Legal Equality, Inc., Legal Aid of Western Ohio, Inc., The Ohio Poverty Law Center, The Coalition on Homelessness and Housing in Ohio, The Center for Responsible Lending, and The National Consumer Law Center, Amici Curiae

DARRELL L. DREHER and ELIZABETH L. ANSTAETT, Attorneys at Law, for Richard F. Keck, Amicus Curiae