[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Ohio Neighborhood Fin., Inc. v. Scott,* Slip Opinion No. 2014-Ohio-2440.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-2440

OHIO NEIGHBORHOOD FINANCE, INC., D.B.A. CASHLAND, APPELLANT, *v.*

SCOTT, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets,

it may be cited as *Ohio Neighborhood Fin., Inc. v. Scott,*

Slip Opinion No. 2014-Ohio-2440.]

*Mortgage Loan Act—R.C. 1321.51 to 1321.60—Short-Term Lender Act—R.C. 1321-35 to 1321.48—Payday-lending loans—An "interest-bearing loan," as defined in R.C. 1321.51(F), may include a loan requiring repayment in a single installment—Lenders registered under the Mortgage Loan Act, R.C. 1321.51 to 1321.60, may make single-installment, interest-bearing loans—The Short Term Loan Act, R.C. 1321.35 to 1321.48, does not limit the authority of lenders registered under the Mortgage Loan Act to make any loans authorized by the Mortgage Loan Act.*

(No. 2013-0103—Submitted December 10, 2013—Decided June 11, 2014.)

APPEAL from the Court of Appeals for Lorain County, No. 11CA010030, 2012-Ohio-5566.

_____

**Syllabus of the Court**

1.  An "interest-bearing loan," as defined in R.C. 1321.51(F), may include a loan requiring repayment in a single installment.

2.  Lenders registered under the Mortgage Loan Act, R.C. 1321.51 to 1321.60, may make single-installment, interest-bearing loans.

3.  The Short-Term Lender Act, R.C. 1321.35 to 1321.48, does not limit the authority of lenders registered under the Mortgage Loan Act to make any loans authorized by the Mortgage Loan Act.

_____

**French, J**.

{¶ 1} This appeal concerns the continued viability of payday lending in Ohio and raises questions regarding how payday loans fit within Ohio's current statutory lending framework.

*Introduction*

{¶ 2} Payday loans are typically small, unsecured, short-term loans, often repayable on the borrower's next payday. Ohio Legislative Service Commission, *Payday Lending in Ohio*, Members Only Brief, Vol. 130, Issue 1 (Jan. 23, 2013), at 1, http://www.lsc.state.oh.us/membersonly/130paydaylending.pdf (accessed June 3, 2014) ("*Payday Lending*"). The borrower generally writes the lender a check for the full loan amount plus all applicable fees and interest, postdated to the borrower's next payday, or authorizes the lender to electronically debit that amount from the borrower's bank account on the borrower's next payday. *Id.; In re Meadows*, 396 B.R. 485, 498 (BAP 6th Cir.2008), fn. 8 (Gregg, J., concurring), quoting Easha Anand, *Payday Lenders Back Measures to Unwind State Restrictions*, Wall Street Journal (Oct. 28, 2008), A6.

{¶ 3} To be sure, payday lending is controversial. Proponents argue that payday loans are necessary and less costly than other available alternatives for low-income individuals to cover unexpected expenses. Opponents argue that the

high costs of payday loans, combined with their short terms, trap borrowers in a cycle of debt, with borrowers often resorting to additional loans to pay off prior loans. *Id.* at 1-2.

**{¶ 4}** R.C. Chapter 1321 governs all manner of loans in Ohio; it includes the Small Loan Act, R.C. 1321.01 to 1321.19, the Ohio Mortgage Loan Act ("MLA"), R.C. 1321.51 to 1321.60, and the Short-Term Lender Act ("STLA"), R.C. 1321.35 to 1321.48. We are concerned here primarily with the MLA and the STLA. In this appeal, we first consider whether the plain language of the MLA, and particularly the definition of "interest-bearing loan" in R.C. 1321.51(F), precludes the issuance of single-installment loans. Next, we consider whether the more recently enacted STLA prohibits registered lenders under the MLA from making payday-style loans even if the plain language of the MLA otherwise authorizes those loans.

**{¶ 5}** For the reasons we detail below, based on the unambiguous language of R.C. 1321.51(F) and 1321.57(A), the longstanding practice of the Ohio Department of Commerce, Division of Financial Institutions, to allow single-installment loans under the MLA, and the absence of any language in the STLA that limits the authority of MLA lenders, we hold that an "interest-bearing loan" under the MLA may require repayment in a single installment and that neither the MLA nor the STLA prohibits registered MLA lenders from making single-installment, interest-bearing loans.

*Relevant Background*

*Mortgage Loan Act*

**{¶ 6}** The MLA was originally enacted in 1965 and, at that time, applied only to lenders who took second mortgages as security for loans. Am.Sub.H.B. No. 403, 131 Ohio Laws, Part I, 439, and Part II, 1804. Now, however, the MLA extends far beyond its initial reach. A registered MLA lender may now make "unsecured loans, loans secured by a mortgage on a borrower's real estate which

is a first lien or other than a first lien on the real estate, loans secured by other than real estate, and loans secured by any combination of mortgages and security interests, on terms and conditions provided by [the MLA]." R.C. 1321.52(C). With the exception of those entities exempted by R.C. 1321.53(D), a lender that wants to make loans under the MLA must register with the Ohio Department of Commerce, Division of Financial Institutions. R.C. 1321.52(A)(1).

{¶ 7} MLA loans may be either interest-bearing or precomputed. R.C. 1321.57(A). An "interest-bearing loan" is a loan "in which the debt is expressed as the principal amount and interest is computed, charged, and collected on unpaid principal balances outstanding from time to time." R.C. 1321.51(F). Pursuant to R.C. 1321.57(C)(1)(a), interest on an interest-bearing loan is to be computed on the unpaid principal outstanding from time to time, for the time outstanding. A "precomputed loan" is "a loan in which the debt is a sum comprising the principal amount and the amount of interest computed in advance on the assumption that all scheduled payments will be made when due." R.C. 1321.51(G). Pursuant to R.C. 1321.57(D)(1), a precomputed loan must be repayable in monthly installments, but there is no equivalent, express requirement for interest-bearing loans.

{¶ 8} The MLA does not restrict the amount that can be lent or the duration of the loan. R.C. 1321.57(A) provides that notwithstanding any other provisions of the Revised Code, an MLA lender may charge interest not exceeding 21 percent per year on the unpaid principal balance, but R.C. 1321.571 authorizes an interest rate not exceeding 25 percent per year "[a]s an alternative" to the rate permitted by R.C. 1321.57(A).

*Check-Cashing Lender Law*

{¶ 9} In 1995, the General Assembly enacted the Check-Cashing Lender Act, former R.C. 1315.35 to 1315.44, Am.H.B. No. 313, 146 Ohio Laws, Part II, 3786-3795, which authorized check-cashing businesses, regulated under R.C.

Chapter 1315, to obtain a separate license entitling them to make small loans, including payday loans. Am.H.B. No. 313, 146 Ohio Laws, Part II, 3786. The Check-Cashing Lender Law originally authorized loans for terms of less than six months and in amounts up to $500, *id*., but that limit was subsequently increased to $800, Sub.H.B. No. 401, 150 Ohio Laws, Part IV, 6318. The law allowed check-cashing lenders to charge a loan-origination fee, former R.C. 1315.40(A), 146 Ohio Laws, Part II, at 3790, and interest of 5 percent per month or fraction of a month on the unpaid principal balance, former R.C. 1315.39(B), *id*. The presence of payday lenders in Ohio expanded rapidly under the Check-Cashing Lender Law; by 2008, the division of financial institutions had issued over 1,500 check-cashing loan licenses. *Payday Lending* at 2. The General Assembly repealed the Check-Cashing Lender Law in 2008 and enacted, in its place, the STLA. 2008 Sub.H.B. No. 545 ("H.B. 545").

*Short-Term Lender Act*

{¶ 10} The STLA reenacted the bulk of the repealed Check-Cashing Lender Law, but with a number of substantive changes addressing perceived dangers associated with payday lending. Ohio Legislative Service Commission, *Bill Analysis*, *Sub.H.B. 545*, http://www.legislature.state.oh.us/analysis.cfm? ID=127_HB_545&ACT=As%20Enrolled&hf=analyses127/08-hb545-127.htm (accessed June 3, 2014). The STLA reduced the maximum loan amount to $500, imposed a minimum loan term of 31 days, and drastically reduced the interest a lender may charge. R.C. 1321.39(A) and (B); R.C. 1321.40(A). Under the STLA, interest is limited to an annual percentage rate ("APR") of 28 percent, and computation of the APR includes not only traditional interest but all fees and charges applicable to a loan. R.C. 1321.40(A) and 1321.35(D). Section 4(A) of H.B. 545 provided that all current licenses under the Check-Cashing Lender Act would remain in effect, unless suspended or revoked, until the license would have

been subject to renewal under the Check-Cashing Lender Law and that those licensees would be recognized as licensees under the STLA.

*Referendum*

{¶ 11} A referendum challenging the repeal of the Check-Cashing Lender Law was on the ballot as Issue 5 in Ohio's November 2008 general election. Issue 5 asked, "Shall Section 3 of H.B. 545 [repealing the Check-Cashing Lender Law] be approved?" Ohio Secretary of State, *Ohio Issues Report: State Issue Ballot Information for the November 4, 2008 General Election*, at 17, http:// www.sos.state.oh.us/sos/upload/publications/election/Issues_08.pdf (accessed June 3, 2014). Although the explanation of the referendum informed voters that approval of Section 3 would subject all short-term lenders, including check-cashing lenders, to the requirements of the STLA, Issue 5 concerned only the repeal of the Check-Cashing Lender Law and not the enactment of the STLA. *Id.* at 17. Amici in support of appellee, Rodney Scott, maintain that the payday-lending industry vigorously opposed the repeal and encouraged voters to reject Issue 5. Appellant, Ohio Neighborhood Finance, Inc., d.b.a. Cashland, admits that lenders opposed the repeal because they stood to lose significant revenue if it took effect. Nevertheless, despite efforts to defeat Issue 5, a majority of the electorate approved Issue 5 and the repeal of the Check-Cashing Lender Law. Appellant states that 43 Cashland lending locations in Ohio were closed as a direct result of the repeal.

{¶ 12} Despite the repeal of the Check-Cashing Lender Law and the enactment of the STLA, there are no lenders currently registered under the STLA. Rather, lenders making payday loans in Ohio are primarily registered under either the MLA or under the Small Loan Act. *Payday Lending* at 3.

*Facts and procedural history*

{¶ 13} Appellant was previously a licensed lender under the Check-Cashing Lender Law. Appellant registered as a lender under the MLA in August

6

2008, after the passage of H.B. 545. Appellant is not registered under the STLA. Appellant admits that the loan product it offers now, purportedly under the MLA, is similar to the loan product it previously offered under the Check-Cashing Lender Law, but it contends that the fees it is able to collect on the MLA product are less than those it collected under the Check-Cashing Lender Law.

{¶ 14} On December 5, 2008, appellant and appellee executed a customer agreement for a single-installment, $500 loan "governed by the laws of the State of Ohio, including the Mortgage Loan Act." The customer agreement established the following payment schedule: "One payment in the amount of $545.16 due on 12/19/08 (Payment Date)." The payment amount included a $10 credit-investigation fee and a $30 loan-origination fee. Appellee agreed to repay the principal amount "plus interest at a rate of 25% per annum on the principal outstanding for the time outstanding from the date of this Customer Agreement until paid in full." Had appellee repaid the loan on time, he would have paid $5.16 in interest. The federal truth-in-lending disclosure in the customer agreement informed appellee that the APR ("[t]he Cost of your credit as a yearly rate") of his loan was 235.48 percent. As used in this disclosure, the APR includes not only interest but also the other finance charges associated with the loan. *Smith v. Anderson,* 801 F.2d 661, 663 (4th Cir.1986), citing 15 U.S.C. 1605-1606. The customer agreement permitted appellee to prepay his loan without penalty and thereby reduce the amount of interest he would owe. It also offered appellee the option of an extended payment plan.

{¶ 15} Appellee defaulted on his loan by not making any payment by December 19, 2008. Appellant filed this action in the Elyria Municipal Court to recover on its loan to appellee.

{¶ 16} In its complaint, appellant sought to recover the unpaid principal balance on appellee's loan, along with interest and fees permitted by the MLA, including a default charge and a returned-check charge. When appellee did not

respond, appellant moved for a default judgment of $570.16, plus interest of 25 percent per annum from December 5, 2008. Appellee had paid a total of $35 toward his debt before appellant moved for default judgment.

{¶ 17} A magistrate initially recommended judgment for appellant in the amount of $545.16 with 5 percent interest from December 19, 2008. After appellant objected, the trial court referred the case back to the magistrate for an evidentiary hearing and a determination of whether the MLA applied to the loan. The magistrate reasoned that appellant was using the MLA as a pretext to evade the limitations of the STLA and determined that appellee's loan was impermissible under the MLA and should be governed by the STLA. The magistrate held that appellant was unauthorized to make any short-term loan in Ohio because appellant was not registered under the STLA. The magistrate further held that even if the MLA applied, appellant's loan to appellee was usurious, in part because it provided for excessive interest. The magistrate recommended judgment for appellant in the amount of $465 ($500 minus Scott's $35 payment), plus interest at the statutory rate of 8 percent per year from December 5, 2008. The trial court adopted the magistrate's decision, over appellant's objections.

{¶ 18} A split panel of the Ninth District Court of Appeals affirmed the municipal court's judgment. 9th Dist. Lorain No. 11CA010030, 2012-Ohio-5566. The majority held that the MLA does not authorize single-installment loans and that by enacting the STLA, the General Assembly intended to prohibit all loans of short duration outside the confines of that act. *Id.* at ¶ 12. Judge Dickinson dissented, concluding that the single-installment loan here satisfied the MLA's definition of "interest-bearing loan" and holding that the General Assembly's supposed intent in enacting the STLA was insufficient to override the MLA's clear authorization of this type of loan. *Id.* at ¶ 19, 24. Neither the majority nor the dissent addressed the validity of a 25-percent interest rate under the MLA.

8

{¶ 19} This court accepted appellant's discretionary appeal. 136 Ohio St.3d 1505, 2013-Ohio-4653, 995 N.E.2d 1209. Although appellee has not appeared before this court, numerous amici have ably presented argument in support of the lower courts' judgments.

*Questions presented*

{¶ 20} Appellant asks this court to decide whether the MLA permits single-installment, interest-bearing loans and, if so, whether the STLA prohibits MLA registrants from making single-installment loans of short duration. Carefully bearing in mind that we must apply statutory language as enacted by the General Assembly and that we are prohibited from acting in a legislative capacity, we answer the first question in the affirmative and the second question in the negative.

*Analysis*

{¶ 21} We first consider whether the MLA permits single-installment loans. The MLA permits both "interest-bearing" and "precomputed" loans, subject to different requirements as set forth in R.C. 1321.57. Appellant does not contend that the MLA authorizes single-installment precomputed loans; R.C. 1321.57(D)(1) requires that precomputed loans are payable in "*monthly* installments of principal and interest combined," signifying the necessity of multiple installments. (Emphasis added.) R.C. 1321.57(C) does not similarly require that an interest-bearing loan be repayable in multiple installments. Nevertheless, the appellate-court majority found that an interest-bearing loan, by definition, cannot include a single-installment loan. Thus, central to our resolution of this question is the statutory definition of "interest-bearing loan" as "a loan in which the debt is expressed as the principal amount and interest is computed, charged, and collected on unpaid principal balances outstanding from time to time." R.C. 1321.51(F).

**{¶ 22}** Our paramount concern in construing a statute is legislative intent. *State ex rel. Steele v. Morrissey*, 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶ 21. To discern legislative intent, we first consider the statutory language, reading all words and phrases in context and in accordance with rules of grammar and common usage. *Id.*; R.C. 1.42. We read and understand statutes " ' "according to the natural and most obvious import of the language, without resorting to subtle and forced constructions." ' " *Lancaster v. Fairfield Cty. Budget Comm.*, 83 Ohio St.3d 242, 244, 699 N.E.2d 473 (1998), quoting *Slingluff v. Weaver*, 66 Ohio St. 621, 627, 64 N.E. 574 (1902), quoting *McCluskey v. Cromwell*, 11 N.Y. 593, 1854 WL 6033, at *5 (1854).

**{¶ 23}** When statutory language is unambiguous, we will apply it as written, without resort to additional rules of statutory interpretation or considerations of public policy. *Zumwalde v. Madeira & Indian Hill Joint Fire Dist.*, 128 Ohio St.3d 492, 2011-Ohio-1603, 946 N.E.2d 748, ¶ 23-24, 26. We may employ rules for construing ambiguous language only when a definitive meaning proves elusive, despite a thorough and objective examination of the statutory language. *State v. Porterfield*, 106 Ohio St.3d 5, 2005-Ohio-3095, 829 N.E.2d 690, ¶ 11. "Otherwise, allegations of ambiguity become self-fulfilling." *Id.*

**{¶ 24}** The appellate-court majority found the statutory definition of "interest-bearing loan"—and specifically the requirement that "interest is computed, charged, and collected on unpaid principal balances outstanding from time to time"—ambiguous:

> According to [appellant], "from time to time" modifies "unpaid principal balances outstanding[,]" and, therefore, a loan could be interest-bearing even if it was collected in a single installment. However, "from time to time" could just as readily modify

"computed, charged, and collected[,]" which would require interest to be collected in multiple installments. *See* R.C. 1321.51(F). In other words, the statute is ambiguous.

2012-Ohio-5566, at ¶ 8.

{¶ 25} In determining whether a statute is ambiguous, we objectively and thoroughly examine the statute, consider each provision in context, and apply ordinary rules of grammar. *Porterfield* at ¶ 11, citing *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11; *Hedges v. Nationwide Mut. Ins. Co.*, 109 Ohio St.3d 70, 2006-Ohio-1926, 846 N.E.2d 16, ¶ 24. When we do that here, we discern no ambiguity in R.C. 1321.51(F).

{¶ 26} It is an accepted rule of construction that in the absence of an expressed contrary intention, referential and qualifying words and phrases refer solely to the last antecedent. *Hedges* at ¶ 24. Applying that rule, the phrase "from time to time" is an adverbial phrase that modifies the antecedent adjective "outstanding," which in turn modifies "unpaid principal balances." The appellate-court majority states that the phrase "from time to time" may also be read as modifying the earlier verbs "computed, charged, and collected," and, therefore requires that a lender collect interest at different times and thus in multiple installments. That reading, however, not only imposes a forced construction on the statute, but also ignores this accepted rule of construction. Had the General Assembly intended to require multiple installments for interest-bearing loans, it could have rearranged the statutory language in R.C. 1321.51(F) to provide that "interest is computed, charged, and collected from time to time on unpaid principal balances outstanding," but that is not how the enacted language is organized, and we may not rewrite the statute in that manner. The General Assembly could also have included a separate provision in the MLA that specifically requires that interest-bearing loans be repayable in multiple

installments, just as it did with precomputed loans by requiring *monthly* installments. *See* R.C. 1321.57(D)(1). Again, it did not do so. Reading the statute according to the natural and most obvious import of the statutory language, we conclude that R.C. 1321.51(F) is not ambiguous, that "from time to time" modifies "outstanding," and that an "interest-bearing loan" need not require multiple installments.

{¶ 27} Appellant's loan to appellee satisfies the definition of an interest-bearing loan under R.C. 1321.51(F). The customer agreement stated as follows:

> You promise to pay us $500.00 (the Principal Amount of this loan) plus interest at a rate of 25% per annum on the principal outstanding for the time outstanding from the date of this Customer Agreement until paid in full. Interest shall be computed daily upon the principal balance outstanding by using the simple interest method, assuming a 365-day year.

The agreement expresses the debt as the principal amount, and the interest is computed based upon the principal balance outstanding daily, in accordance with the definition of "interest-bearing loan" in R.C. 1321.51(F). Likewise, the computation of interest is consistent with the requirements applicable to interest-bearing MLA loans under R.C. 1321.57(C).

{¶ 28} The second question we must decide is whether the STLA prohibits MLA registrants from making payday-style loans even if those loans are otherwise permissible under the MLA. This issue arises because, despite its determination that the MLA does not apply to single-installment loans, the court of appeals' majority went on to hold that the General Assembly intended, by its repeal of the Check-Cashing Lender Law and its enactment of the STLA, to prohibit any two-week loan. 2012-Ohio-5566, at ¶ 12. The majority reasoned

that allowing MLA registrants to make two-week, single-installment loans would "nullify the very legislation that is designed to regulate payday-type loans." *Id.* at ¶ 11.

{¶ 29} The arguments made by the amici in support of appellee concern this second question. Amici urge this court to hold that the STLA is the exclusive authority governing payday loans in Ohio and that regardless of how lenders label them, payday loans must comply with the STLA. Thus, even if the MLA generally permits single-installment, interest-bearing loans, amici for appellee maintain that *payday* loans—short-term, unsecured, single-installment consumer loans—cannot be made under the MLA because they are specifically and exclusively regulated under the STLA.

{¶ 30} The STLA imposes duties upon a person licensed and "any person required to be licensed" under the act, and it prohibits licensees from engaging in any device or subterfuge to avoid the requirements of the act. R.C. 1321.47(A); R.C. 1321.41(J). Pursuant to R.C. 1321.36(A), no person may make a short-term loan to an Ohio borrower without first obtaining an STLA license, but R.C. 1321.35(A) defines "short-term loan" narrowly as a loan made pursuant to the STLA. Thus, there is no language in the STLA that requires a lender to be licensed under that act before making a payday-style loan. Had the General Assembly intended the STLA to be the sole authority for issuing payday-style loans, it could have defined "short-term loan" more broadly.

{¶ 31} In an opinion issued shortly after the enactment of the STLA, the Ohio Attorney General recognized that the fact that R.C. 1321.35 defines a "short-term loan" as a loan under R.C. 1321.35 to 1321.48 shows that the licensing requirement in R.C. 1321.36(A) applies only to those lenders who make loans under that act and *not to all lenders of loans of short duration*. 2008 Ohio Atty.Gen.Ops. No. 2008-036, at *3. In that opinion, the Attorney General was answering a question posed by the Department of Commerce regarding the ability

of a person licensed under the Check-Cashing Lender Law to make loans pursuant to that law while also holding an STLA license, prior to the 2008 referendum. But the opinion is not as narrow as the question presented. By stating that a person who "has a valid license to make another type of loan" may make a loan in conformance with the requirements of that license, free from the limitations of the STLA, *id.* at *3, fn. 5, the Attorney General recognized the independence of the various lending acts.

**{¶ 32}** Appellant is not licensed under the STLA and is, therefore, not entitled to make short-term loans pursuant to the STLA. R.C. 1321.35(A) and 1321.36(A). But the loan here was not an STLA loan; it is undisputed that the STLA would not permit the subject loan, because its terms contravene the STLA's requirements regarding the loan term, interest, and fees. Because appellant did not issue a "loan made pursuant to sections 1321.35 to 1321.48 of the Revised Code," the loan does not qualify as a "short-term loan" subject to the requirements of the STLA.

**{¶ 33}** Nothing in the STLA limits the authority of MLA registrants to make MLA loans. As the Attorney General recognized in 2008 Ohio Atty.Gen.Ops. No. 2008-036, at *4, H.B. 545 itself, at least implicitly, recognized the existence of an alternative statutory authority available to lenders previously licensed under the Check-Cashing Lender Law. *See* H.B. 545, Section 4(B) (requiring a licensee under the Check-Cashing Lender Law who applied for a license under the Small Loan Act for the 2008 licensing period to pay only half the license fee required by R.C. 1321.03).

**{¶ 34}** In an attempt to paint the STLA as the exclusive statutory authority for payday-type loans, amici in support of appellee argue that reading the MLA in pari materia with the STLA clarifies the General Assembly's intent. In the absence of statutory ambiguity, however, we may not resort to rules of statutory interpretation. *See State ex rel. Wolfe v. Delaware Cty. Bd. of Elections*, 88 Ohio

St.3d 182, 186, 724 N.E.2d 771 (2000) (no need to apply interpretive rules to unambiguous statutory language); *State v. Krutz*, 28 Ohio St.3d 36, 37-38, 502 N.E.2d 210 (1986) (in pari materia rule applies only when a statute is ambiguous or the significance of its terms is doubtful).

{¶ 35} Beyond the absence of language in the STLA restricting MLA lenders in any way, R.C. 1321.57(A) authorizes MLA registrants to contract for and receive interest on MLA loans "*[n]otwithstanding* any other provisions of the Revised Code." (Emphasis added.) "Notwithstanding" indicates the General Assembly's intention that R.C. 1321.57(A) takes precedence over any contrary statute purporting to limit a registrant's authority. *See State ex rel. Carmean v. Hardin Cty. Bd. of Edn.*, 170 Ohio St. 415, 422, 165 N.E.2d 918 (1960); *Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 18, 113 S.Ct. 1898, 123 L.Ed.2d 572 (1993) ("a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section"). The precedence afforded a "notwithstanding" clause is effective regardless of whether that clause predates the conflicting provision. *See State ex rel. PIA Psych. Hosps., Inc. v. Ohio Certificate of Need Rev. Bd.*, 60 Ohio St.3d 11, 17-18, 573 N.E.3d 14 (1991) (holding that a later-adopted bill did nothing to change the General Assembly's intent that certificate-of-need applications were governed by an earlier bill, which included a "notwithstanding" provision).

{¶ 36} The court of appeals' supposition concerning the legislative intention behind the STLA, emphasized here by amici in support of appellee, cannot override the unambiguous statutory language of R.C. 1321.57(A). Indeed, the legislature, not the courts, should resolve any incongruity between the legislature's intent and the statutory language enacted. *State ex rel. Celebrezze v. Allen Cty. Bd. of Cty. Commrs.*, 32 Ohio St.3d 24, 28, 512 N.E.2d 332 (1987). The question is not what the General Assembly intended to enact but the meaning of that which it did enact. *State v. Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969,

804 N.E.2d 471, ¶ 12, quoting *Slingluff*, 66 Ohio St. 621, 64 N.E. 574, at paragraph two of the syllabus.

**{¶ 37}** In over five years since the enactment of the STLA, the General Assembly has not taken any action to preclude the practice of payday-style lending under the other lending acts in effect prior to the STLA. As we have previously noted, legislative inaction in the face of knowledge of longstanding statutory interpretation may suggest a legislative intent to retain existing law. *Maitland v. Ford Motor Co.*, 103 Ohio St.3d 463, 2004-Ohio-5717, 816 N.E.2d 1061, ¶ 26. Here, the General Assembly's acquiescence to the status quo contradicts the court of appeals' determination that the General Assembly intended the STLA to be the exclusive legislation governing the type of short-term, single-installment loans at issue here.

*Conclusion*

**{¶ 38}** It is not the role of the courts to establish legislative policy or to second-guess policy choices the General Assembly makes. *Kaminski v. Metal & Wire Prods. Co.*, 125 Ohio St.3d 250, 2010-Ohio-1027, 927 N.E.2d 1066, ¶ 61. If the General Assembly intended to preclude payday-style lending of any type except according to the requirements of the STLA, our determination that the legislation enacted in 2008 did not accomplish that intent will permit the General Assembly to make necessary amendments to accomplish that goal now. But the position that amici in support of appellee urge upon this court is fraught with legislative policy decisions, and to adopt that position would exceed the bounds of this court's authority.

**{¶ 39}** In conclusion, we hold that an "interest-bearing loan," as defined in R.C. 1321.51(F), may include a loan requiring repayment in a single installment. Lenders registered under the MLA may make single-installment, interest-bearing loans, and the STLA does not limit the authority of lenders registered under the MLA to make any loans authorized by the MLA. The unambiguous language of

the MLA, consistent with the reasonable administrative construction of R.C. 1321.51(F), compels the conclusion that appellant's loan to appellee was an interest-bearing loan as defined under the MLA.

{¶ 40} As a final matter, we note that we do not decide whether the loan described in the customer agreement complies in all respects with the MLA, but only whether appellant, as an MLA registrant, was entitled to make MLA-compliant loans unaffected by the STLA. For example, we do not decide whether the customer agreement's requirement of interest at 25 percent per annum, pursuant to R.C. 1321.571, was permitted by the MLA, or whether the 21-percent-interest cap in R.C. 1321.57(A) applies. The court of appeals did not address that issue, and appellant's propositions of law do not implicate it here.

{¶ 41} For all these reasons, we reverse the judgment of the Ninth District Court of Appeals and remand this matter to the trial court for further proceedings consistent with this opinion.

Judgment reversed

and cause remanded.

O'DONNELL, PFEIFER, LANZINGER, KENNEDY, and O'NEILL, JJ., concur.

O'CONNOR, C.J., concurs in judgment only.

_____

**PFEIFER, J., concurring.**

{¶ 42} I concur in the majority opinion. I write separately because something about the case doesn't seem right.

{¶ 43} There was great angst in the air. Payday lending was a scourge. It had to be eliminated or at least controlled. So the General Assembly enacted a bill, the Short-Term Lender Act ("STLA"), R.C. 1321.35 to 1321.48, to regulate short-term, or payday, loans. And then a funny thing happened: nothing. It was as if the STLA did not exist. Not a single lender in Ohio is subject to the law. How is this possible? How can the General Assembly set out to regulate a

controversial industry and achieve absolutely nothing? Were the lobbyists smarter than the legislators? Did the legislative leaders realize that the bill was smoke and mirrors and would accomplish nothing?

_____

Zeiger, Tigges & Little L.L.P., John W. Zeiger, and Stuart G. Parsell, for appellant.

Squire Sanders (US), L.L.P., Pierre H. Bergeron, and Colter L. Paulson, urging reversal for amicus curiae Ohio Chamber of Commerce.

Vorys, Sater, Seymour & Pease, L.L.P., and Frederick E. Mills, urging reversal for amicus curiae Ohio Council of Retail Merchants.

Sara Bruce, urging reversal for amicus curiae Ohio Automobile Dealers Association.

The Mirman Law Firm, L.L.C., and Joel H. Mirman, urging reversal for amici curiae Norfleet Rives and Daniel Oglevee.

Dreher Tomkies Scheiderer, L.L.P., Darrell L. Dreher, and Elizabeth L. Anstaett, urging reversal for amicus curiae Richard F. Keck.

Legal Aid Society of Cleveland, Julie K. Robie, Katherine B. Hollingsworth, and Thomas Mlakar; Ohio Poverty Law Center, L.L.C., and Linda Cook; Southeastern Ohio Legal Services and Melissa Benson; Legal Aid Society of Southwest Ohio, L.L.C., and Nicholas DiNardo; Advocates for Basic Legal Equality, Inc., and Stanley A. Hirtle; and Legal Aid Society of Columbus and Scott Torguson, urging affirmance for amici curiae Legal Aid Society of Cleveland, Legal Aid Society of Columbus, Community Legal Aid Services, Inc., Southeastern Ohio Legal Services, Legal Aid Society of Southwest Ohio, L.L.C., Advocates for Basic Legal Equality, Inc., Legal Aid of Western Ohio, Inc., Ohio Poverty Law Center, L.L.C., ProSeniors, Inc., Coalition on Homelessness and Housing in Ohio, and Catholic Conference of Ohio.

Cannizzaro, Bridges, Jillisky & Streng, L.L.C., and Amy E. Gullifer, urging affirmance for amici curiae Center for Responsible Lending and National Consumer Law Center.

_____