[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Paluch v. Zita,* Slip Opinion No. 2014-Ohio-4529.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-4529

THE STATE EX REL. PALUCH, APPELLANT, *v.* ZITA, MAYOR, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Paluch v. Zita,* Slip Opinion No. 2014-Ohio-4529.]

*Mandamus—Writ sought to compel city to televise city council meetings via broadcast tower—City acted within its discretion when it chose to live-stream council meetings over the Internet—Court of appeals' denial of writ affirmed.*

(No. 2013-1176—Submitted May 13, 2014—Decided October 15, 2014.)

APPEAL from the Court of Appeals for Summit County, No. 26849.

_____

LANZINGER, J.

{¶ 1} In March 2013, the city of Norton began broadcasting its city council meetings over the Internet by live video stream. Appellant-relator, William Paluch, a resident and registered voter in Norton, filed a petition for a writ of mandamus, arguing that Norton was violating a duty under its charter to "televise" city council meetings via broadcast tower.

**{¶ 2}** The Ninth District Court of Appeals denied the writ, on the grounds that Norton acted within its discretion when it chose to live-stream council meetings over the Internet. We affirm.

*Facts*

**{¶ 3}** In November 2012, voters in the city of Norton approved adding Section 3.20 to the city's charter. That section provides:

**Section 3.20 Televised Meetings**

Effective upon passage by the electors, the Administration and Council shall have up to sixty days to arrange for and commence public airings of all Council meetings, work sessions, and workshops. All aforementioned Council meetings shall be televised "live," in their entirety, without censorship and/or editing. Such televised broadcasts shall further be offered twice weekly during repeat airings for public accessibility. Additionally, Council shall arrange for copies of the recorded Council meetings to be available at minimum cost to the public upon request or at no cost to citizens supplying their own suitable medium for recording.

**{¶ 4}** Since March 1, 2013, all meetings of the Norton City Council have been broadcast over the Internet by live video stream, accessible through the city's website. According to the city's administrative officer, the city rebroadcasts the meetings and workshops "on televisions located in the Norton City Council's chambers." The recordings are available upon request, at little or no cost.

*Procedural history*

**{¶ 5}** On April 1, 2013, Paluch filed a petition for a writ of mandamus in the Ninth District Court of Appeals. According to Paluch, the city breached its

legal duty to "televise" council meetings. Paluch named appellee Mike Zita, mayor of Norton, as the respondent.

{¶ 6} Zita filed a motion for summary judgment, arguing that the city's decision to "televise" by live-streaming the meetings was an exercise of discretion and that mandamus cannot be used to control the exercise of administrative discretion. Paluch responded that the meaning of the word "televise" was a material fact in dispute, precluding summary judgment.

{¶ 7} The Ninth District Court of Appeals granted summary judgment in favor of Zita and denied the writ. The court of appeals held that Paluch could not establish a clear right to relief, because the charter amendment "does not specify the means by which televising the meetings must be accomplished." 9th Dist. Summit No. 26849 (June 12, 2013), 3. The court went on to hold that the city had complied with the charter because Internet streaming is a manner of televising the meetings.

{¶ 8} Paluch timely appealed.

*Analysis*

{¶ 9} To be entitled to a writ of mandamus, Paluch must establish a clear legal right to the requested relief, a clear legal duty on the part of Zita to provide it, and the lack of an adequate remedy in the ordinary course of law. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6. Paluch must prove entitlement to the writ by clear and convincing evidence. *Id*., ¶ 13. This court reviews the denial of a writ of mandamus for abuse of discretion. *State ex rel. Hillyer v. Tuscarawas Cty. Bd. of Commrs*., 70 Ohio St.3d 94, 97, 637 N.E.2d 311 (1994).

{¶ 10} Section 3.20 of the charter requires Norton to "commence public airings" of council meetings. The charter then twice refers to these "public airings" as "televised" broadcasts. The charter does not define the word

"televised," nor does it offer any further guidance as to what constitutes "public airings."

{¶ 11} Paluch's appeal is premised on the argument that the word "televise" has a single, fixed definition, one which does not include live Internet streaming. Under his sole proposition of law, he argues that the Norton City Council has a clear legal duty to abide by the plain and unambiguous language of the charter and that broadcasting the city council meetings in the manner the council has chosen is a violation of that duty.

{¶ 12} Paluch has focused on the wrong term in the amendment. The purpose of the charter amendment was to expand the public's immediate access to city council's workings by requiring "public airings." The voters gave the Norton City Council discretion as to the means of implementing the amendment. We cannot conclude that the court of appeals acted in an unreasonable, arbitrary, or unconscionable manner when it held that mandamus would not lie because the city had complied with its charter. *See State ex rel. Hunt v. Shoemaker*, 17 Ohio St.3d 65, 477 N.E.2d 626 (1985), quoting *State ex rel. Breaux v. Court of Common Pleas*, 50 Ohio St.2d 164, 363 N.E.2d 743 (1977) (" '[a] writ of mandamus will not issue to compel a public official to perform a legal duty which has been completed' ").

{¶ 13} Moreover, we reject Paluch's contention that the word "televised," as used in Section 3.20, is unambiguous. When statutory language is unambiguous, it must be applied as written, without resort to rules of statutory interpretation or considerations of public policy. *Ohio Neighborhood Fin., Inc. v. Scott*, 139 Ohio St.3d 536, 2014-Ohio-2440, 13 N.E.3d 1115, ¶ 23.

{¶ 14} The exhibit submitted by Paluch defines the noun "television" to mean electrical signals "transmitted by UHF [ultrahigh frequency] or VHF [very high frequency] radio waves or by cable and reconverted into optical images by means of a television tube inside a television set." Paluch's source for this

4

definition is thefreedictionary.com, which in turn attributes the definition to the *Collins English Dictionary* (2003).

{¶ 15} Earlier definitions of "television" referred exclusively to a system of transmitting images and sounds by radio waves, and did not include cable transmission. *See, e,g,* 17 *Oxford English Dictionary* 733 (2d Ed.1989). More recent definitions encompass all transmissions via "electronic or electromagnetic signals" and omit that the conversion from signal to picture be accomplished by a television tube. *See, e.g.,* http://www.thefreedictionary.com/television, which attributes the definition to *The American Heritage Dictionary of the English Language* (4th Ed.2000, updated in 2009). These citations demonstrate that, far from having a plain and fixed definition, the word "television" has evolved over time to encompass new technologies, including the Internet.

{¶ 16} Given the inherent fluidity of the term, we cannot say that the city of Norton abused its discretion by interpreting Section 3.20 to permit public airing of city council meetings by way of live Internet streaming. Paluch has failed to establish that Zita failed to perform a clear legal duty, and we therefore affirm the judgment of the court of appeals.

Judgment affirmed.

O'CONNOR, C.J., and PFEIFER and O'NEILL, JJ., concur.

O'DONNELL, KENNEDY, and FRENCH, JJ., dissent.

_____

**O'DONNELL, J., dissenting.**

{¶ 17} I respectfully dissent.

{¶ 18} In November 2012, voters in the city of Norton amended the city's charter to require the city to televise all city council meetings. The amendment states:

**Section 3.20 Televised Meetings**

Effective upon passage by the electors, the Administration and Council shall have up to sixty days to arrange for and commence public airings of all Council meetings, work sessions, and workshops. All aforementioned Council meetings shall be *televised* "live," in their entirety, without censorship and/or editing. Such *televised broadcasts* shall further be offered twice weekly during repeat airings for public accessibility. Additionally, Council shall arrange for copies of the recorded Council meetings to be available at minimum cost to the public upon request or at no cost to citizens supplying their own suitable medium for recording.

(Emphasis added.)

**{¶ 19}** Since the amendment of the charter, the city has not televised the city council meetings, but rather has streamed live video footage of the meetings over the Internet, accessible through the city's website, and in this case, William Paluch sought a writ of mandamus to compel the city to *televise* those meetings. The Ninth District Court of Appeals denied the writ, concluding that the charter "does not specify the means by which televising the meetings must be accomplished" and that Internet streaming is a manner of televising the meetings. 9th Dist. Summit No. 26849 (June 12, 2013), 3-4.

**{¶ 20}** A writ of mandamus shall lie if a relator is able to establish a clear legal right to the requested relief, a clear legal duty on the part of the respondent to provide it, and the lack of an adequate remedy in the ordinary course of law. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6.

**{¶ 21}** In construing charter provisions, we apply "general laws regarding statutory interpretation, including construing charter language according to its

ordinary and common usage." *State ex rel. Commt. for Proposed Ordinance to Repeal Ordinance No. 146-02, W. End Blight Designation, v. Lakewood*, 100 Ohio St.3d 252, 2003-Ohio-5771, 798 N.E.2d 362, ¶ 19. "A court construing a provision in a city charter, statute, contract or other writing may not ignore the existence of any word or phrase." *Cleveland Elec. Illum. Co. v. Cleveland*, 37 Ohio St.3d 50, 53, 524 N.E.2d 441 (1988).

{¶ 22} Here, the Norton city charter has used the terms "televised broadcasts" and "airings," and those terms have established meanings. "Televise" means "to broadcast by television." *Webster's Third New International Dictionary* 2351 (1993); *Merriam-Webster Online*, available at http://www.merriam-webster.com/dictionary/televise (accessed Sept. 23, 2014). "Broadcast" means "the act of sending out sound or images by radio or television transmission." *Webster's Third New International Dictionary* 280; *Merriam-Webster Online*, available at http://www.merriam-webster.com/dictionary/ broadcast (accessed Sept. 23, 2014). And "airing" means "a radio or television broadcast," *Webster's Third New International Dictionary* 46, or "an occurrence in which a radio or television program is broadcast," *Merriam-Webster Online*, available at http://www.merriam-webster.com/dictionary/airing (accessed Sept. 23, 2014). The common denominator in each of these definitions is television— but the Norton city charter does not specify that live streaming video is a substitute for, or equivalent to, the mandate to televise the council proceedings.

{¶ 23} Even if the majority is correct that viewing an Internet stream on a computer is tantamount to watching television, Internet streaming is not a televised *broadcast*;  rather streaming is more accurately understood to be a *unicast* of media, in that there is one stream of data directed from a central server to the user's specific computer over an individual IP address. *See* Walker, *A La Carte Television: A Solution to Online Piracy?*, 20 CommLaw Conspectus 471, 479 (2012). As one commentator has noted, "Unlike television and technology

from its era, the Internet functioned as an individualized, unicast medium from the beginning. The Internet eschews the very concept of 'broadcasting' in favor of individual control—users requests information they want on their terms and that information is delivered." Bassett, *The Inevitable Television Revolution: The Technology Is Ready, the Business Is Lagging, and the Law Can Help*, 29 Syracuse J.Sci. & Tech.L.Rep. 1, 25 (2013), fn. 104.

{¶ 24} This is not a case in which we are asked to construe older charter language adopted before the advent of newer technology; the electors of Norton were aware of the existence of Internet streaming in 2012 but nonetheless amended the charter to require the city to televise its city council proceedings, directing the city to use a specific manner of transmitting the audio and video of those proceedings in "public airings" through "televised broadcasts," and these are terms that are commonly understood to require the use of a television set. A televised broadcast may be streamed over the Internet, but a program transmitted solely by way of an Internet stream is not a televised broadcast.

{¶ 25} Paluch has established a clear legal right to the relief requested and demonstrated no adequate remedy at law, and Section 3.20 of the charter of the city of Norton imposes a clear legal duty on the city to televise its council proceedings. Because the city has not done so, I would reverse the judgment of the court of appeals and grant the writ of mandamus.

KENNEDY and FRENCH, JJ., concur.

_____

William Paluch, pro se.

Roetzel & Andress, L.P.A., Stephen W. Funk, and Justin Markey, for appellee.

_____