[Cite as *Realty Income Corp. v. Garb-Ko, Inc.*, 2013-Ohio-4932.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Realty Income Corporation, | : | |
| Plaintiff-Appellee/<br>[Cross-Appellant], | : | |
| | : | No. 13AP-35 |
| v. | | (C.P.C. No. 09CVH-04-6092) |
| | : | |
| Garb-Ko, Inc., | | (REGULAR CALENDAR) |
| | : | |
| Defendant-Appellant/<br>[Cross-Appellee]. | : | |

D E C I S I O N

Rendered on November 7, 2013

*Statman, Harris & Eyrich, LLC*, *William B. Fecher*, and *Saba N. Alam*, **for appellee.**

*Hrabcak & Company, L.P.A.*, *Michael Hrabcak* and *Benjamin B. Nelson*; *Varnum, LLP*, and *William E. Rohn*, **for appellant**.

APPEAL from the Franklin County Court of Common Pleas

CONNOR, J.

{¶ 1} Defendant-appellant/cross-appellee, Garb-Ko, Inc. ("Garb-Ko"), appeals from a judgment of the Franklin County Court of Common Pleas entered in favor of plaintiff-appellee/cross-appellant, Realty Income Corporation ("Realty"). Because (1) Garb-Ko failed to establish that Realty waived its right to full rent payments or that Realty should be estopped from collecting the rent payments, but (2) the trial court erred by failing to apply the contract rate of interest to the damages award, we affirm in part and reverse in part.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2}   Realty filed a complaint against Garb-Ko for breach of contract and money damages on April 22, 2009.  Realty alleged that Garb-Ko breached its obligations under two commercial leases by failing to make the required rent payments when due.  Garb-Ko operated 7-Eleven stores on the two leased premises.  One store was located in Groveport, Ohio, and the other in Columbus, Ohio.

{¶ 3}   The events giving rise to the complaint began in 2008 when Garb-Ko began to experience a negative cash flow at its Groveport location.  Garb-Ko wrote a letter to Realty on December 19, 2008 regarding the economic condition of the Groveport store, and asked Realty "for a rent reduction beginning January 2009."  (First Post-Trial Brief of Garb-Ko ("Garb-Ko's Post-Trial Brief"), exhibit A.)[1]  The monthly rent at the Groveport location was $8,141.24, and Garb-Ko asked Realty to reduce the monthly rent to $4,100.  In return, Garb-Ko offered to sign a ten-year lease renewal.  Garb-Ko informed Realty that it planned "to close the doors and give [Realty] back the keys by January 8, 2009 without a positive response" to the December 19, 2008 letter.  (Garb-Ko's Post-Trial Brief, exhibit A.)

{¶ 4}   On January 2, 2009, Elizabeth Cate, Realty's vice president of portfolio management for Realty's eastern region, sent Diane Doyle, Garb-Ko's vice president of real estate, an e-mail acknowledging the December 19, 2008 letter, and requesting that Garb-Ko send Realty the 2007 and 2008 store level financial statements for the Groveport and Columbus stores.  Doyle responded to Cate's e-mail, stating that she would send the requested information promptly.

{¶ 5}   On January 13, 2009, Garb-Ko sent Realty a wire with one-half of the total rent due under the Columbus and Groveport lease agreements.  Realty sent Garb-Ko a late notice that same day, indicating that the total amount of rent for the stores had been due on January 1, 2009.  The notice indicated that Garb-Ko could avoid being in default under the lease if it paid the past due rent and a late fee within three days of receiving

---

[1] Garb-Ko did not file a copy of the trial transcript or the trial exhibits with the clerk of court. *See* App.R. 9(B)(3).  The trial transcript and certain trial exhibits are contained in the record as exhibits attached to Garb-Ko's post-trial brief.

the notice.  A lease administrator for Realty also sent Doyle an e-mail on January 13, 2009, which contained a copy of the late notice letter.

{¶ 6}   On January 14, 2009, Doyle sent Cate an e-mail which stated: "We ask that you waive the notice while we are working through our options/negotiations with you concerning these stores. We did pay 1/2 the rent as a goodwill gesture earlier in the month."  (Garb-Ko's Post-Trial Brief, exhibit B.)  Cate responded to Doyle's e-mail the same day, stating: "Understood. Our lease administrator sent the letter as a matter of course and pursuant to the lease terms. Thank you, Elizabeth."  (Garb-Ko's Post-Trial Brief, exhibit B.)

{¶ 7}   On January 15, 2009, Doyle held an executive staff meeting at Garb-Ko. Doyle "told everyone about the e-mail we had received, [and] that [Cate] understood that we would only be paying 4,000 a month rent until we came to * * * terms of the negotiations."  (Tr. 70, attached to Garb-Ko's Post-Trial Brief.)  Doyle explained that Garb-Ko relied on Cate's January 14, 2009 e-mail, and decided not to close the Groveport store based on the e-mail.  Cate explained that she used the word "understood" in her January 14, 2009 e-mail to mean she understood Doyle's "rationale for her half payment of rent and the fact that we were talking."  (Tr. 53, attached to Garb-Ko's Post-Trial Brief.)

{¶ 8}   In February 2009, Garb-Ko again paid only one-half of the rent which was due under the lease agreements.  Realty sent Garb-Ko a late notice on February 5, 2009. On February 7, 2009, Doyle sent Cate an e-mail stating: "I am just confirming that you are continuing to waive half the rent while we work through the lease reviews."  (Tr. 53, attached to Garb-Ko's Post-Trial Brief.)  Cate responded to the e-mail stating "[j]ust to confirm, no rent is waived . . . Garb-Ko unilaterally acted to pay half rent, and it was not agreed to by Realty."  (Tr. 81, attached to Garb-Ko's Post-Trial Brief.)  Cate explained that when Doyle used the actual words "waive half the rent" in the February e-mail, Cate realized that it was "necessary to confirm that no – that absolutely no rent was waived. Our discussions [regarding modifying the lease terms] were a courtesy to their request, not an obligation of ours, * * * but the rent was always due and payable."  (Tr. 53, attached to Garb-Ko's Post-Trial Brief.)

{¶ 9}   Garb-Ko continued to pay only one-half of the rent due under the lease agreements, and Realty continued to send Garb-Ko late notices and default notices, as Garb-Ko failed to pay the rent in full.   As of December 1, 2010, Garb-Ko owed $97,344.15 in arrearages and $8,283.01 in late fees, under the Groveport lease. Although Garb-Ko initially made only partial rent payments on the Columbus lease, Garb-Ko later paid the rent in full for that location.   Garb-Ko, however, had outstanding late fees of $2,768.70 as of December 1, 2010 for the Columbus location.   (*See* Tr. 25, attached to Garb-Ko's Post-Trial Brief.)

{¶ 10} Garb-Ko filed an answer to Realty's complaint on May 21, 2009, asserting the affirmative defenses of waiver and estoppel.   Realty filed a motion for summary judgment on May 13, 2010, but the court subsequently denied the motion.   The matter proceeded to trial on January 12, 2011; Cate and Doyle were the only witnesses to testify. Both parties filed post-trial briefs.   Garb-Ko asserted in its post-trial brief that Cate's January 14, 2009 e-mail effectively waived Realty's right to seek the full amount of rent payments due under the lease while the parties negotiated, and estopped Realty from asserting its right to full rent payments.

{¶ 11} On September 12, 2011, the court issued a decision and entry finding in favor of Realty.   The court determined that Cate's January 14, 2009 e-mail did not waive Realty's right to full rent payments.   The court noted that, as Doyle's e-mail to Cate "only asked that Realty waive the late notice," Cate's response of "understood" could not amount to a waiver of Realty's contractual right to full rent payments.   (Sept. 12, 2011 Decision, 4.)   The court further noted that the history of the communications between the parties demonstrated that Realty never intended to waive its right to full rent payments, as Realty had continuously "sent notices, e-mails, and made calls to Doyle clarifying that Realty never intended nor agreed to a waiver."   (Sept. 12, 2011 Decision, 4.)   The court further found that Garb-Ko's equitable estoppel argument failed, noting that Garb-Ko's reliance on Cate's "understood" e-mail as authorizing Garb-Ko to make partial rent payments was not reasonable and not relied upon in good faith.   The court entered judgment in favor of Realty "for all unpaid amounts, including late fees and interest on the Columbus and Groveport Leases."   (Sept. 12, 2011 Decision, 6.)

{¶ 12} On November 9, 2011, Realty filed a motion requesting the court to reduce the claim to judgment. Realty noted that, although the court had entered judgment in Realty's favor, the court had failed to specify a sum which was due to Realty under the lease agreements. Realty attached an exhibit to its motion which set forth the total amount of unpaid rent, interest, and late fees due under the Groveport and Columbus leases, the total sum of which was $118,697.36.

{¶ 13} On January 9, 2013, the trial court issued a final appealable order of judgment. The court ordered Garb-Ko to pay damages in the amount of $118,697.36 "plus interest at the statutory rate of interest until paid." (Jan. 9, 2013 Order, 1.)

## II. ASSIGNMENTS OF ERROR

{¶ 14} Garb-Ko appeals, assigning the following errors:

> I. THE TRIAL COURT ABUSED ITS DISCRETION IN HOLDING THAT REALTY INCOME DID NOT WAIVE ITS RIGHT TO FULL RENTAL PAYMENTS.
>
> II. THE TRIAL COURT ABUSED ITS DISCRETION IN HOLDING THAT REALTY INCOME IS NOT ESTOPPED FROM RECOVERING UNPAID RENT.
>
> III. THE TRIAL COURT ABUSED ITS DISCRETION IN RULING TRIAL EXHIBIT 43 INADMISSIBLE IN THAT ITS INTENDED USE WAS MERELY TO PROVE THE LENGTH OF THE PARTIES' NEGOTIATIONS AND EXTENT OF REALTY INCOME'S WAIVER.

{¶ 15} Realty cross-appeals, assigning the following error:

> THE TRIAL COURT ERRED IN AWARDING PLAINTIFF-APPELLEE INTEREST AT THE STATUTORY RATE INSTEAD OF THE CONTRACT RATE.

## III. GARB-KO's ASSIGNMENTS OF ERROR—WAIVER AND ESTOPPEL

{¶ 16} Garb-Ko's first assignment of error asserts the trial court abused its discretion by failing to find that Realty waived its right to full rental payments. The lease agreements provided that no waiver of any lease provision would be "valid unless it [was] in writing and signed by the party against which the enforcement of the

modification, waiver, amendment, discharge, or change is or may be sought." (Complaint exhibit A, Land and Building Lease Agreement ("Lease"), Section 28.5.)

{¶ 17} "Waiver is a voluntary relinquishment of a known right and is generally applicable to all personal rights and privileges, whether contractual, statutory or constitutional." *Glidden Co. v. Lumbermens Mut. Cas. Co.,* 112 Ohio St.3d 470, 2006-Ohio-6553, ¶ 49. "Waiver assumes one has an opportunity to choose between either relinquishing or enforcing of the right." *Chubb v. Ohio Bur. of Workers' Comp.,* 81 Ohio St.3d 275, 279 (1998). A party who has a duty to perform and who changes its position as a result of the waiver may enforce the waiver. *Id.* A party asserting waiver must prove it by establishing a clear, unequivocal, decisive act by the other party demonstrating the intent to waive. *N. Olmsted v. Eliza Jennings, Inc.*, 91 Ohio App.3d 173, 180 (8th Dist.1993), citing *White Co. v. Canton Transp. Co.*, 131 Ohio St. 190, 198-99 (1936).

{¶ 18} Waiver of a contract provision may be express or implied. *Lewis & Michael Moving & Storage, Inc. v. Stofcheck Ambulance Serv., Inc.,* 10th Dist. No. 05AP-662, 2006-Ohio-3810, ¶ 29. A waiver operates to preclude a subsequent assertion of the right waived, and "once a right is waived, the waiver cannot be withdrawn without the consent of the other party, even if subsequent events proved the right waived to have been more valuable than was anticipated." *Pokorny v. Pecsok*, 50 Ohio St.2d 262, 263 (1977), fn. 2. However, "[o]ne party cannot bind another when it is obvious that what otherwise would seem a rights waiver is actually a misunderstanding or was unintentional." *Id.*, citing 1 Williston on Contracts, Acceptance of Offers, Section 94, at 343 (3d Ed.1957). *See also Weaver v. Weaver*, 36 Ohio App.3d 210, 212 (4th Dist.1987) (noting that waiver requires an "actual intention to relinquish [a known right]").

{¶ 19} "Whether a party has waived a term of a contract is a question of fact." *Monroe Excavating, Inc. v. DJD & C Dev., Inc.*, 7th Dist. No. 10 MA 12, 2011-Ohio-3169, ¶ 40. Review of a trial court's factual determinations involves some degree of deference, and we will not disturb a trial court's findings of fact where the record contains competent, credible evidence to support such findings. *EAC Properties, L.L.C. v.*

*Brightwell*, 10th Dist. No. 10AP-853, 2011-Ohio-2373, ¶ 23, citing *Wiltberger v. Davis*, 110 Ohio App.3d 46, 52 (10th Dist.1996).

{¶ 20} Garb-Ko contends that because the term "understood" is synonymous with the term "agreed," Cate's January 14, 2009 e-mail response amounted to an agreement by Realty to waive its right to full rental payments. *See Phoenix Iron & Steel Co. v. Wilkoff Co.*, 253 F. 165, 167 (6th Cir.1918) (the court, determining whether a party had accepted the terms of a contract, stated that "[t]he word 'understood' is synonymous with 'agreed' "). Even if we accept Garb-Ko's contention that the word understood is synonymous with the word agreed, we do not find that Cate's use of the term in her response e-mail amounted to a waiver of Realty's right to full rental payments.

{¶ 21} Garb-Ko was obligated to pay the rent on the first day of each month "without offset or deduction." (Lease, Section 4.2, 20.2.) The lease specified that a tenant's failure to pay the rent when due was an event of default. The lease provided, however, that for "up to two times during any Lease Year, if any rental is not received when due, Landlord shall notify Tenant in writing, and Tenant shall have three (3) days from the date of receipt of the notice to make full payment of the rental." (Lease, Section 17.1.1.) If the tenant failed to pay the late rent in full within the three-day period, the tenant would be in default under the lease.

{¶ 22} Doyle's January 14, 2009 e-mail to Cate, which Doyle sent the day after Garb-Ko received the January late notice, asked Realty to "waive the notice while we are working through our options/negotiations" and stated that Garb-Ko had paid half of the rent "as a goodwill gesture." (Garb-Ko's Post-Trial Brief, exhibit B.) Doyle's January 14, 2009 e-mail did not ask Cate to waive any portion of the rental payments. Doyle's e-mail asked Cate to waive the notice, i.e. the late notice, while the parties negotiated. Because Doyle only asked Cate to "waive the notice" while the parties negotiated, Cate's response of "[u]nderstood" would, at most, be construed as an agreement to waive the late notices. Cate's response could not be construed as a clear, decisive, or unequivocal act waiving Realty's right to full rental payments.

{¶ 23} We further note that, when a party alleges waiver, and the alleged waiver occurs "after a breach of the original contract by the party claiming the benefit of the

waiver, it should receive not only careful but serious consideration at the hands of the courts, as such an arrangement is diametrically opposed to sound business principles." *White Co.* at 198. Garb-Ko had already breached the lease agreement, by making a late payment of only one-half of the January rent, when Doyle e-mailed Cate on January 14, 2009. Garb-Ko had also stated its desire to pay only one-half of the rent due for January in its December 19, 2008 letter to Realty. Although Realty never agreed to the rent reduction proposed in Garb-Ko's December 19, 2008 letter, Garb-Ko did not close the doors to the Groveport store and unilaterally decided to pay partial rent in January 2009. Accordingly, Garb-Ko's attempt to construe Cate's January 14, 2009 response e-mail as authorizing Garb-Ko to pay one-half of the rent, after Garb-Ko breached the lease agreement the previous day, contravenes sound business principles as stated in *White Co*; and bolsters the conclusion that Realty did not intend to waive its right to full rental payments.

{¶ 24} Garb-Ko failed to establish a clear, decisive, and unequivocal act by Realty which expressed Realty's intent to waive its right to full rental payments. Based on the foregoing, Garb-Ko's first assignment of error is overruled.

{¶ 25} Garb-Ko's second assignment of error asserts the trial court abused its discretion by holding that equitable estoppel did not bar Realty from recovering the unpaid rent. Equitable estoppel arises from a misrepresentation of fact and prevents recovery " 'when one party induces another to believe certain facts exist and the other party changes his position in reasonable reliance on those facts to his detriment.' " *Doe v. Archdiocese of Cincinnati,* 116 Ohio St.3d 538, 2008-Ohio-67, ¶ 7, quoting *State ex rel. Chavis v. Sycamore City School Dist. Bd. of Edn.,* 71 Ohio St.3d 26, 34 (1994). Thus, estoppel involves the conduct of both parties, whereas waiver depends upon what one intends to do. *Chubb* at 279.

{¶ 26} "A prima facie case of equitable estoppel requires proof of (1) a factual representation that, (2) is misleading, (3) induces actual reliance that is reasonable and in good faith, and (4) causes detriment to the relying party." *Hudson v. Petrosurance, Inc.,* 10th Dist. No. 08AP-1030, 2009-Ohio-4307, ¶ 38, citing *Ruch v. Ohio Dept. of Transp.,* 10th Dist. No. 03AP-1070, 2004-Ohio-6714, ¶ 14. Equitable estoppel is a

mixed question of law and fact and must be submitted to the jury when an evidentiary dispute exists regarding its application. *JRC Holdings, Inc. v. Samsel Servs. Co.*, 166 Ohio App.3d 328, 2006-Ohio-2148, ¶ 28 (11th Dist.) "An appellate court reviews a lower court's application of the doctrine of equitable estoppel for abuse of discretion." *Hoeppner v. Jess Howard Elec. Co.*, 150 Ohio App.3d 216, 225, 2002-Ohio-1667, ¶ 44 (10th Dist.)

{¶ 27} The trial court did not abuse its discretion in finding that Garb-Ko failed to establish that it had reasonably relied in good faith on Cate's January 14, 2009 e-mail response. The court noted that Garb-Ko had unilaterally decided to pay only partial rent in January, and that Garb-Ko "continued to operate the stores on the Columbus and Groveport premises even after being repeatedly notified that Realty never agreed to any waiver or modification." (Sept. 12, 2011 Decision, 5.)

{¶ 28} Garb-Ko asserts that Cate's January 14, 2009 e-mail amounted to a factual misrepresentation, whereby Realty indicated that it was willing to "waive full rent and default remedies." (Garb-Ko's brief, 26.) However, as discussed above, because Doyle did not ask Cate to waive any portion of the rent in the January 14, 2009 e-mail, Garb-Ko could not reasonably construe Cate's response as a factual representation that Realty was agreeing to accept only partial rental payments.

{¶ 29} While Doyle testified that she relied heavily on Cate's e-mail, and decided not to close the Groveport store in reliance on the e-mail, such reliance was not reasonable or done in good faith. Realty had never agreed to Garb-Ko's December 19, 2008 letter requesting a rent reduction, yet Garb-Ko decided to pay only partial rent in January. Thereafter, as Garb-Ko began to pay only one-half of the rent due each month, Realty sent late notices, and subsequently default notices, each month that Garb-Ko failed to pay the full amount of rent due. In February, when Doyle asked Cate to confirm that she had waived Realty's right to full rental payments, Cate responded clarifying that she had never agreed to accept partial rental payments, and stated that Garb-Ko was liable for the full amount of rental payments due under the lease agreements.

{¶ 30} The trial court did not abuse its discretion in finding that Garb-Ko failed to establish the elements of equitable estoppel. Based on the foregoing, Garb-Ko's second assignment of error is overruled.

{¶ 31} Garb-Ko's third assignment of error asserts the trial court abused its discretion in ruling that a certain trial exhibit, exhibit No. 43, was inadmissible as it concerned matters discussed during the parties' mediation. Garb-Ko asserts the trial court erred in excluding the document, as the document would establish the length of the parties' negotiations over the lease. Counsel for Garb-Ko, however, conceded at oral argument before this court that we need not determine the length of the parties' negotiations if we conclude that Realty had not waived its right to full rental payments. Accordingly, our ruling on Garb-Ko's first assignment of error renders Garb-Ko's third assignment of error moot.

## IV. CROSS-APPEAL—INTEREST

{¶ 32} Realty cross-appeals, asserting that the trial court erred by ordering Garb-Ko to pay damages in the amount of $118,697.36 "plus interest at the statutory rate of interest until paid." (Jan. 9, 2013 Decision and Entry, 1.) Realty asserts the trial court should have applied the interest rate specified in the lease agreement, and not the statutory rate. Section 17.6 of the lease agreement provides that "[a]ny amount not paid to the other when due to the other party will bear interest from the date due at * * * the prime commercial rate being charged by the Bank of America N.A. in effect on the date due plus two percent (2%) per annum."

{¶ 33} Because Realty's assignment of error on cross-appeal raises issues of law only, our review is de novo. *John Soliday Fin. Group, LLC v. Sutzman*, 9th Dist. No. 08CA0046, 2009-Ohio-2081, ¶ 6. R.C. 1343.03 establishes interest rates for both prejudgment and post-judgment interest. R.C. 1343.03(A) provides that:

> In cases other than those provided for in sections 1343.01 and 1343.02 of the Revised Code, when money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is

entitled to interest at the rate per annum determined pursuant to section 5703.47 of the Revised Code, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract.

{¶ 34} "The statutory rate set forth in R.C. 1343.03(A) is simply a default rate to be charged should the parties not contract otherwise." *First Bank of Ohio v. Wigfield*, 10th Dist. No. 07AP-561, 2008-Ohio-1278, ¶ 19. Thus, a judgment creditor is entitled to an interest rate in excess of the statutory interest rate when (1) the parties have a written contract, and (2) that contract provides a rate of interest with respect to money that becomes due and payable. *Id.* at ¶ 20. "Once a judgment is rendered, the interest rate in the contract or note will continue to govern until the amount due is paid." *Id.*

{¶ 35} Accordingly, as the parties specified a rate of interest in Section 17.6 of their lease agreement, the trial court erred in applying the statutory rate of interest to the judgment. Although there is no evidence in the record informing the trial court of the prime commercial rate of interest, the parties agree on appeal that the prime rate is 3.25 percent, and that the interest rate under the lease agreement is 5.25 percent.

{¶ 36} Garb-Ko concedes that the trial court erred in applying the statutory interest rate to the judgment. Nonetheless, in its cross-appellee brief, Garb-Ko identifies several potential errors with the trial court's damages award. Garb-Ko failed to raise these issues in its memorandum contra Realty's motion to reduce the claim to judgment, and failed to object to the court's January 9, 2013 decision. By failing to raise its contentions regarding the damages award in the court below, Garb-Ko waived its right to raise these arguments on appeal. *See Hudson v. P.I.E. Mut. Ins. Co.,* 10th Dist. No. 10AP-480, 2011-Ohio-908, ¶ 12, quoting *Gentile v. Ristas,* 160 Ohio App.3d 765, 2005-Ohio-2197, ¶ 74 (10th Dist.) (" 'It is well settled that a litigant's failure to raise an issue before the trial court waives the litigant's right to raise that issue on appeal.' ").

{¶ 37} Nonetheless, the "waiver," or forfeiture rule "is tempered somewhat by the doctrine of plain error." *S & P Lebos, Inc. v. Ohio Liquor Control Comm.,* 163 Ohio App.3d 827, 2005-Ohio-5424, ¶ 12 (10th Dist.) Although the plain error doctrine is generally disfavored in civil cases, the doctrine may apply in "the extremely rare case

involving exceptional circumstances" where error "to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122-23 (1997).

{¶ 38} The trial court adopted Realty's calculations of the outstanding rent, applicable interest, and late fees, as detailed in Realty's attachment to its motion to reduce the claim to judgment.  Garb-Ko notes in its cross-appellee brief that Realty applied the incorrect interest rate to the prejudgment interest portion of its damages calculations.  Realty explained in the motion that it had calculated the prejudgment "interest per diem on any unpaid amount (amount of payment times 6.00% interest rate divided by 365 days)."  (Motion to Reduce Claim to Judgment, 2, fn. 4.)  On appeal, Realty now admits that "the contract rate of interest is 5.25% per annum."  (Cross-appellant's Reply Brief, 1.)  Accordingly, as the $118,697.36 judgment includes prejudgment interest at a rate other than the contract rate, we find plain error in the court's damages award.

{¶ 39} Based on the foregoing, Realty's sole cross-assignment of error is sustained.

## V.  DISPOSITION

{¶ 40}  Having overruled Garb-Ko's first and second assignments of error, thereby rendering Garb-Ko's third assignment of error moot, and sustaining Realty's sole assignment of error on cross-appeal, we affirm the September 12, 2011 entry of the Franklin County Court of Common Pleas, but reverse the January 9, 2013 entry of that court entering judgment in the amount of $118,697.36 plus interest at the statutory rate. This matter is remanded to the Franklin County Court of Common Pleas to apply the contractual rate of interest to the judgment, consistent with this decision.

*Judgment affirmed in part*
*and reversed in part;*
*cause remanded.*

BROWN and DORRIAN, JJ., concur.

_____