[Cite as *Midwestern Auto Sales, Inc. v. Lattimore*, 2015-Ohio-53.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| MIDWESTERN AUTO SALES, INC., | : | CASE NOS. CA2014-02-029 |
| | | CA2014-02-030 |
| Plaintiff-Appellant, | : | CA2014-02-031 |
| | | CA2014-02-032 |
| | : | CA2014-03-067 |
| - vs - | | CA2014-03-068 |
| | : | CA2014-04-086 |
| | | CA2014-04-087 |
| KRISTI LATTIMORE, et al., | ; | |
| | | O P I N I O N |
| Defendants-Appellees. | : | 1/12/2015 |

CIVIL APPEAL FROM MIDDLETOWN MUNICIPAL COURT
Case Nos. 13 CVF 01566, 13 CVF 00260, 13 CVF 01289, 12 CVF 02782, 13 CVF 01290,
13 CVF 00921, 13 CVF 02501, 13 CVF 02502

Thomas G. Eagle, 3386 North State Route 123, Lebanon, Ohio 45036, for plaintiff-appellant

Kristi Lattimore and Oshae Martin, 416 Weaver Avenue, Middletown, Ohio 45044, defendants-appellees, pro se

Donna J. and Scott A. Lee, 3127 Madison Avenue, Hamilton, Ohio 45015, defendants-appellees, pro se

King D. Bussie and Karen K. Brown, 3239 Wilbraham Road, Middletown, Ohio 45042, defendants-appellees, pro se

Kathrin Cleary, 943 Foxcroft Place, Trenton, Ohio 45067, defendant-appellee, pro se

Bonnie Ferrell, 1221 Jackson Lane, Middletown, Ohio 45044, defendant-appellee, pro se

Cathy Engel and Braun Combs, 2102 Pearl Street, Middletown, Ohio 45044, defendants-appellees, pro se

Chelsea Harrison and Joshua Vitek, 212 Rosemarie Drive, Lebanon, Ohio 45036, defendants-appellees, pro se

**HENDRICKSON, J.**

{¶ 1} Plaintiff-appellant, Midwestern Auto Sales, Inc., appeals from multiple judgments of the Middletown Municipal Court, challenging the court's award of damages. Midwestern brought suit against defendants-appellees, Kristi Lattimore and Oshae Martin (Case No. CA 2014-02-029), Donna J. Lee and Scott A. Lee (Case No. CA2014-02-030), King D. Bussie and Karen K. Brown (Case No. CA2014-02-031), Kathrin Cleary (Case No. CA2014-02-032), King D. Bussie (Case No. CA2014-03-067), Bonnie Ferrell (Case No. CA2014-03-068), Cathy Engel and Braun Combs (Case No. CA2014-04-086), and Chelsea Harrison and Joshua Vitek (Case No. CA2014-04-087), after appellees defaulted in payment under the terms of retail installment contracts entered into to finance the purchase of used motor vehicles from Midwestern. Judgments were entered in favor of Midwestern on its breach of contract claims, and the trial court awarded interest on the damages awards at the statutory rate rather than at the interest rate set forth in the parties' contracts.

## I.  FACTS

### A.  Case No. CA2014-02-029:  Kristi Lattimore and Oshae Martin

{¶ 2}  On July 9, 2013, Midwestern filed a complaint against Lattimore and Martin after they defaulted under the terms of a retail installment contract entered into on February 5, 2013, for the purchase of a 2000 Buick Century from Midwestern. Midwestern asserted that as of June 26, 2013, $3,200.64 was due and owing pursuant to the contractual agreement entered into by the parties. Attached to Midwestern's complaint were copies of the "Retail Purchase Agreement (Buyers Order)" form (hereafter, Purchase Agreement) and the "Retail Installment Sale Contract" form executed by Lattimore and Martin, as well as an account statement detailing Lattimore and Martin's payments and subsequent default on the contract. The Purchase Agreement described the vehicle being purchased and set forth the cash price of the vehicle, the down payment made by Lattimore and Martin, and the

- 2 -

remaining unpaid balance. The Retail Installment Sale Contract set forth the Federal Truth-in-Lending Disclosures, and provided that the "Annual Percentage Rate," or the "cost of your credit as a yearly rate" was 24.89 percent. The Retail Installment Sale Contract also provided that Lattimore and Martin were to make 36 weekly payments of $120 for the purchase of the vehicle.

{¶ 3} Neither Lattimore nor Martin filed an answer or otherwise appeared in the action, and Midwestern moved for default judgment. The trial court granted default judgment against Lattimore and Martin on November 15, 2013, finding that Midwestern was entitled to judgment in its favor "in the amount of $3,200.64, plus interest at the contracted rate [sic] of 3.0% per year, from the date June 26, 2013, plus the costs of [the] action." On November 27, 2013, Midwestern filed a Civ.R. 60(B) motion for relief from judgment, seeking to have the trial court set aside the damage award. Midwestern contended that the trial court erred, as a matter of law, in awarding interest (including prejudgment interest) at the statutory rate of 3.0 percent when the Retail Installment Sale Contract entered into by the parties provided for an interest rate of 24.89 percent. However, on December 13, 2013, prior to the trial court ruling on Midwestern's Civ.R. 60(B) motion, Midwestern appealed the court's award of default judgment.[1]

### B. Case No. CA2014-02-030: Donna J. Lee and Scott A. Lee

{¶ 4} On January 31, 2013, Midwestern filed a complaint against Donna and Scott after they defaulted under the terms of a retail installment contract entered into on September 24, 2011, for the purchase of a 1999 Ford Expedition from Midwestern. Midwestern asserted that as of December 17, 2012, $7,709.32 was due and owing pursuant

---

1. Although the trial court was divested of jurisdiction to consider Midwestern's Civ.R. 60(B) motion for relief from judgment because Midwestern had appealed the entry granting default judgment, *see Howard v. Catholic Social Serv. of Cuyahoga Cty., Inc.*, 70 Ohio St.3d 141, 147 (1994), the trial court issued an opinion on January 31, 2014 denying Midwestern's motion for relief. Midwestern has not appealed from that decision.

to the contractual agreement of the parties. Midwestern attached copies of the Purchase Agreement and Retail Installment Sale Contract executed by Donna and Scott, as well as an account statement detailing Donna and Scott's payments and subsequent default on the contract to its complaint. The Purchase Agreement described the vehicle being purchased and set forth the cash price of the vehicle, the down payment made by Donna and Scott, and the remaining unpaid balance. The Retail Installment Sale Contract set forth the Federal Truth-in-Lending Disclosures, and provided that the "Annual Percentage Rate," or the "cost of your credit as a yearly rate" was 24.73 percent. The Retail Installment Sale Contract also provided that Donna and Scott were to make 59 bi-weekly payments of $150 and one additional payment $106.09 for the purchase of the Ford Expedition.

{¶ 5} Neither Donna nor Scott filed an answer or otherwise appeared in the action, and Midwestern moved for default judgment. On November 21, 2013, the trial court granted Midwestern's motion for default judgment, and awarded it damages "in the amount of $7,709.32, plus interest at the contracted rate [sic] of 3.0% per year, from the date December 17, 2013, plus the costs of this action." On November 27, 2013, Midwestern filed a Civ.R. 60(B) motion for relief from judgment, seeking to have the trial court set aside the damage award because the trial court had failed to award interest at the rate agreed to by the parties in the Retail Installment Contract. However, on December 13, 2013, prior to the trial court ruling on Midwestern's Civ.R. 60(B) motion, Midwestern appealed the court's award of default judgment.[2]

### C. Case No. CA2014-02-031: King D. Bussie and Karen K. Brown

{¶ 6} On June 6, 2013, Midwestern filed a complaint against Bussie and Brown after

---

2. After Midwestern appealed, the trial court issued a decision denying Midwestern's Civ.R. 60(B) motion on January 31, 2014. As previously set forth, the trial court lacked jurisdiction to consider Midwestern's motion for relief from judgment after Midwestern filed its appeal. *See Howard*, 70 Ohio St.3d at 147. Midwestern has not appealed the trial court's January 31, 2014 entry denying Midwestern's motion for relief from judgment.

they defaulted under the terms of a retail installment contract entered into on December 5, 2011, for the purchase of a 1998 Ford Expedition from Midwestern. Midwestern asserted that as of March 1, 2013, $9,035.33 was due and owing pursuant to the contractual agreement of the parties. Midwestern attached to its complaint copies of the Purchase Agreement and Retail Installment Sale Contract executed by Bussie and Brown, as well as an account statement detailing Bussie and Brown's payments and subsequent default on the contract. The Purchase Agreement described the vehicle being purchased and set forth the cash price of the vehicle, the down payment made by Bussie and Brown, and the remaining unpaid balance. The Retail Installment Sale Contract set forth the Federal Truth-in-Lending Disclosures, and provided that the "Annual Percentage Rate," or the "cost of your credit as a yearly rate" was 24.88 percent. The Retail Installment Sale Contract also provided that Bussie and Brown were to make 248 weekly payments of $65 and one additional payment of $9.51 for the purchase of the Ford Expedition.

{¶ 7} Neither Bussie nor Brown filed an answer or otherwise appeared in the action, and Midwestern moved for default judgment. On November 15, 2013, the trial court entered default judgment against Bussie and Brown, finding that Midwestern was entitled to damages "in the amount of $9,035.33, plus interest at the rate of 3.0% per year, from the date March 1, 2013, plus the costs of this action."[3] On December 13, 2013, Midwestern appealed the trial court's award of default judgment against Brown and Bussie.[4]

---

3. After the trial court granted default judgment against Bussie and Brown, Midwestern filed a "Motion for Amended Default Judgment," contending that the "prior judgment had errors in the amounts" and had to be corrected to conform to the complaint. The trial court found no merit to Midwestern's Amended Motion for Default Judgment. Midwestern appeals from the trial court's initial entry entering default judgment against Bussie and Brown, filed on October 2, 2013, rather than from the denial of its Amended Motion for Default Judgment.

4. A review of the record reveals that Midwestern never received the notice mandated by Civ.R. 58(B) of the trial court's November 15, 2013 judgment. As such, Midwestern is not time-barred, according to App.R. 4(A), from appealing the trial court's November 15, 2013 judgment. *See* Civ.R. 58(B) and App.R. 4(A); *Zuk v. Campbell*, 12th Dist. Clermont No. CA94-03-018, 1994 WL 721990, *3 (Dec. 30, 1994). Midwestern's appeal in Case No. CA2014-02-031 is, therefore, considered timely.

### D.  Case No. CA20014-02-032:  Kathrin Cleary

{¶ 8}  On October 19, 2012, Midwestern filed a complaint against Ryan M. Day and Cleary after they defaulted under the terms of a retail installment contract entered into on May 18, 2012, for the purchase of a 2002 Ford F-150 from Midwestern.[5]  Midwestern asserted that as of October 10, 2012, $7,904.39 was due and owing pursuant to the contractual agreement of the parties.  Midwestern attached copies of the Purchase Agreement and Retail Installment Sale Contract executed by Day and Cleary, as well as an account statement detailing Day and Cleary's payments and subsequent default on the contract to its complaint.  The Purchase Agreement described the vehicle being purchased and set forth the cash price of the vehicle, the down payment made by Day and Cleary, and the remaining unpaid balance.  The Retail Installment Sale Contract set forth the Federal Truth-in-Lending Disclosures, and provided that the "Annual Percentage Rate," or the "cost of your credit as a yearly rate" was 24.87 percent.  The Retail Installment Sale Contract also provided that Day and Cleary were to make 49 bi-weekly payments of $250 and one additional payment of $102.83 for the purchase of the Ford F-150.

{¶ 9}  Neither Day nor Cleary filed an answer or otherwise appeared in the action, and Midwestern moved for default judgment.  On April 10, 2013, the magistrate entered default judgment against Day.  Thereafter, on October 2, 2013, the trial court entered default judgment against Cleary and in favor of Midwestern, finding Midwestern was entitled to judgment "in the amount of $7,904.39, plus interest at the rate of 3.0% per year, from the date October 10, 2012, plus the costs of this action."  On November 27, 2013, Midwestern filed a Civ.R. 60(B) motion for relief from judgment, seeking to have the trial court set aside

---

5. Although Ryan M. Day was a co-buyer of the 2002 Ford F-150 and default judgment was rendered against him on April 10, 2013, Midwestern did not appeal from the judgment rendered against Day.  Rather, Midwestern's Notice of Appeal only sought to appeal the trial court's October 2, 2013 judgment of default against Cleary.  Day, therefore, is not a party to the present appeal.

the damage award entered against Cleary. Midwestern contended that the trial court erred, as a matter of law, in awarding interest, including prejudgment interest, at the statutory rate of 3.0 percent when the Retail Installment Sale Contract provided for an interest rate of 24.87 percent. However, on December 13, 2013, prior to the trial court ruling on Midwestern's Civ.R. 60(B) motion, Midwestern appealed the courts award of default judgment against Cleary.[6] Midwestern did not appeal from the default judgment and damage award rendered against Day.[7]

## E. Case No. CA2014-03-067: King D. Bussie

{¶ 10} On June 6, 2013, Midwestern filed a complaint against Bussie after he defaulted under the terms of a retail installment contract entered into on September 14, 2012, for the purchase of a 1993 Chevrolet Lumina from Midwestern. Midwestern asserted that as of March 1, 2013, $1,480.55 was due and owing pursuant to the contractual agreement of the parties. Midwestern attached to its complaint copies of the Purchase Agreement and Retail Installment Sale Contract executed by Bussie, as well as an account statement detailing Bussie's payments and subsequent default on the contract. The Purchase Agreement described the vehicle being purchased and set forth the cash price of the vehicle, the down payment made by Bussie, and the remaining unpaid balance. The Retail Installment Sale Contract set forth the Federal Truth-in-Lending Disclosures, and provided that the "Annual Percentage Rate," or the "cost of your credit as a yearly rate" was 24.61 percent. The Retail Installment Sale Contract also provided that Bussie was to make

---

6. Although the trial court was divested of the jurisdiction to consider Midwestern's Civ.R. 60(B) motion for relief from judgment because Midwestern had appealed the entry granting default judgment, the trial court issued an opinion on January 31, 2014 denying Midwestern's motion for relief. Midwestern has not appealed from that decision.

7. Because Midwestern never received the notice mandated by Civ.R. 58(B) of the trial court's October 2, 2013 award of default judgment against Cleary, Midwestern's appeal of the October 2, 2013 judgment in Case No. CA2014-02-032 is considered timely pursuant to Civ.R. 58(B) and App.R. 4(A). *See Zuk*, 1994 WL 721990 at *3.

five bi-weekly payments of $150 and one additional payment of $56.71 for the purchase of the Chevrolet Lumina.

{¶ 11} Bussie failed to file an answer or otherwise appear in the action, and Midwestern moved for default judgment. On October 2, 2013, the trial court entered default judgment against Bussie, finding that Midwestern was entitled to damages "in the amount of $631.74, plus interest at the rate of 3.0% per year, from the date March 1, 2013, plus the costs of this action." Thereafter, on October 8, 2013, Midwestern filed a "Motion for Amended Default Judgment" to correct an error in the amount due under the contract from $631.74 to $1,480.55 and to have the interest rate changed from 3.0 percent to 24.61 percent. On November 15, 2014, the magistrate issued a decision granting in part and denying in part Midwestern's motion for amended default judgment. The magistrate found that the motion to amend was "not well taken as to the change in interest rate." Specifically the magistrate held that "[i]nterest is granted at the statutory rate of 3% per annum simple interest [as] [n]o specific contract rate was noted in the original documents." The magistrate did, however, find that damages should have been awarded in the amount of $1,480.55, and it amended the judgment to reflect this amount. Midwestern timely filed "Objections to or Motion to Set Aside Magistrate's Decision/Order or Alternative Motion for Relief From Judgment," arguing that it was entitled to interest, including prejudgment interest, at a rate of 24.61 percent rather than the statutory rate of 3.0 percent pursuant to the Retail Installment Sale Contract entered into by the parties.

{¶ 12} On January 31, 2014, the trial court overruled Midwestern's objections or alternative motion for relief, finding that while the federal Truth-In-Lending disclosure set forth in Retail Installment Sale Contract signed by the parties stated that the annual percentage rate for the loan was 24.61 percent, "a reading of the agreement does not disclose any text that states that the Truth-in-Lending rate is also the contract rate for the loan." Absent such

a designation, the trial court found that it was required to apply the 3.0 percent statutory interest rate, as set forth in R.C. 1343.03. In reaching this determination, the court noted that "[t]he APR as set forth in the Truth-in-Lending Disclosure Statement includes not only the interest rate, but additional other fees and lender charges. * * * Absent a clear designation of the agreed upon interest rate the statutory rate must apply." Following the denial of its objections or alternative motion for relief from judgment, Midwestern appealed.

### F. Case No. CA2014-03-068: Bonnie Ferrell

{¶ 13} On April 23, 2013, Midwestern filed a complaint against Ferrell after she defaulted under the terms of a retail installment contract entered into on September 26, 2012, for the purchase of a 2002 Oldsmobile Silhouette from Midwestern. Midwestern asserted that as of March 1, 2013, $631.74 was due and owing pursuant to the contractual agreement of the parties. Midwestern attached to its complaint copies of the Purchase Agreement and Retail Installment Sale Contract executed by Ferrell, as well as an account statement detailing Ferrell's payments and subsequent default on the contract. The Purchase Agreement described the vehicle being purchased and set forth the cash price of the vehicle, the down payment made by Ferrell, and the remaining unpaid balance. The Retail Installment Sale Contract set forth the Federal Truth-in-Lending Disclosures, and provided that the "Annual Percentage Rate," or the "cost of your credit as a yearly rate" was 24.86 percent. The Retail Installment Sale Contract also provided that Ferrell was to make 55 weekly payments of $65 and one additional payment of $30.40 for the purchase of the Oldsmobile Silhouette.

{¶ 14} On September 27, 2013, Ferrell filed an answer out of time. In her answer, Ferrell stated that it was her understanding that her insurance company had paid off Midwestern following an automobile accident in which she was involved. A hearing on Midwestern's motion for default judgment was held on October 23, 2013, before a magistrate.

At this time, Midwestern provided evidence of the balance due on the retail installment contract. On November 14, 2013, the magistrate issued a decision granting Midwestern's motion for default judgment, finding that Midwestern was entitled to recover $631.74 with interest from March 1, 2013 at the statutory rate of 3.0 percent.

{¶ 15} Midwestern timely filed "Objections to or Motion to Set Aside Magistrate's Decision/Order or Alternative Motion for Relief From Judgment," arguing that it was entitled to interest, including prejudgment interest, at a rate of 24.86 percent rather than the statutory rate of 3.0 percent pursuant to the Retail Installment Sale Contract entered into by the parties. On January 31, 2014, the trial court overruled Midwestern's objections or alternative motion for relief, stating that "[t]his Court agrees with the Decision of the Magistrate. The APR set forth in the Truth-In-Lending Disclosure includes not only the interest rate, but additional other fees and lender charges. Absent a clear designation of the agreed upon interest rate the statutory rate must apply." Following the denial of its objections or alternative motion for relief from judgment, Midwestern appealed.

### G. Case No. CA2014-04-086: Cathy Engle and Braun Combs

{¶ 16} On July 9, 2013, Midwestern filed a complaint against Engle and Combs after they defaulted under the terms of a retail installment contract entered into on August 2, 2013, for the purchase of a 2001 Cadillac Seville from Midwestern. Midwestern asserted that as of October 9, 2013, $4,337.57 was due and owing pursuant to the contractual agreement entered into by the parties. Attached to Midwestern's complaint were copies of the Purchase Agreement and the Retail Installment Sale Contract form executed by Engle and Combs, as well as an account statement detailing Engle and Combs' payments and subsequent default on the contract. The Purchase Agreement described the vehicle being purchased and set forth the cash price of the vehicle, the down payment made by Engle and Combs, and the remaining unpaid balance. The Retail Installment Sale Contract set forth the Federal Truth-

in-Lending Disclosures, and provided that the "Annual Percentage Rate," or the "cost of your credit as a yearly rate" was 24.86 percent. The Retail Installment Sale Contract also provided that Engle and Combs were to make 24 weekly payments of $150 and one additional payment of $138.59 for the purchase of the Cadillac Seville.

{¶ 17} On November 14, 2013, Engle and Combs filed an answer. Thereafter, on December 10, 2013, Midwestern filed a motion for judgment on the pleadings. Engle and Combs did not file a brief in opposition. A hearing on Midwestern's motion was held on January 9, 2014. On February 7, 2014, the magistrate issued a decision granting Midwestern's motion for judgment on the pleadings, and awarding judgment in favor of Midwestern in the amount of $4,337.57 with interest from the date of judgment at the statutory rate of 3.0 percent. Midwestern timely filed "Objections to or Motion to Set Aside Magistrate's Decision/Order or Alternative Motion for Relief From Judgment," arguing that it was entitled to interest, including prejudgment interest, at a rate of 24.86 percent rather than the statutory rate of 3.0 percent pursuant to the Retail Installment Sale Contract entered into by the parties. On March 11, 2014, the trial court overruled Midwestern's objections or alternative motion for relief, finding that the statutory rate of interest applied. The court, therefore, adopted the magistrate's decision awarding $4,337.57 plus interest at the statutory rate of 3.0 percent from the date of judgment to Midwestern.[8] Midwestern timely appealed the trial court's decision.[9]

### H. Case No. CA2014-04-087: Chelsea Harrison and Joshua Vitek

---

8. The trial court mistakenly referred to the date of judgment as January 9, 2014, which was the date of the hearing on Midwestern's motion for judgment on the pleadings. The magistrate's decision was entered on February 7, 2014.

9. Midwestern erroneously attached a copy of the trial court's April 2, 2014 denial of Engle and Combs' motion for relief from judgment to its Notice of Appeal. However, from the face of Midwestern's Notice of Appeal, it is apparent that Midwestern is seeking to appeal the trial court's March 11, 2014 decision overruling Midwestern's' objections to the magistrate's decision and entering judgment on the pleadings in favor of Midwestern in the amount of $4,337.57 with interest at the statutory rate of 3.0 percent.

{¶ 18} On October 28, 2013, Midwestern filed a complaint against Harrison and Vitek after they defaulted under the terms of a retail installment contract entered into on July 22, 2013, for the purchase of a 2006 Pontiac Grand Prix from Midwestern. Midwestern asserted that as of September 25, 2013, $6,552.75 was due and owing pursuant to the contractual agreement entered into by the parties. Attached to Midwestern's complaint were copies of a Credit Application, the Purchase Agreement, and the Retail Installment Sale Contract form executed by Harrison and Vitek, as well as an account statement detailing Harrison and Vitek's payments and subsequent default on the contract. The Purchase Agreement described the vehicle being purchased and set forth the cash price of the vehicle, the down payment made by Harrison and Vitek, and the remaining unpaid balance. The Retail Installment Sale Contract set forth the Federal Truth-in-Lending Disclosures, and provided that the "Annual Percentage Rate," or the "cost of your credit as a yearly rate" was 24.74 percent. The Retail Installment Sale Contract also provided that Harrison and Vitek were to make 38 bi-weekly payments of $200 and one additional payment of $82.03 for the purchase of the Pontiac Grand Prix.

{¶ 19} On November 18, 2013, Harrison and Vitek filed separate answers to Midwestern's complaint, "disputing" the claims brought against them. Thereafter, on December 10, 2013, Midwestern filed a motion for judgment on the pleadings. Harrison and Vitek did not file a brief in opposition. A hearing on Midwestern's motion was held on January 9, 2014. On February 7, 2014, the magistrate issued a decision granting Midwestern's motion for judgment on the pleadings, and awarding judgment in favor of Midwestern in the amount of $6,552.75 with interest from the date of judgment at the statutory rate of 3.0 percent. Midwestern timely filed "Objections to or Motion to Set Aside Magistrate's Decision/Order or Alternative Motion for Relief From Judgment," arguing that it was entitled to interest, including prejudgment interest, at a rate of 24.74 percent rather than

the statutory rate of 3.0 percent pursuant to the Retail Installment Sale Contract entered into by the parties. On March 11, 2014, the trial court overruled Midwestern's objections or alternative motion for relief, finding that the statutory rate of interest applied. The court, therefore, adopted the magistrate's decision awarding $6,552.75 plus interest at the statutory rate of 3.0 percent from the date judgment to Midwestern.[10] Midwestern timely appealed the trial court's decision.

## II. ANALYSIS

{¶ 20} Midwestern has raised as its sole assignment of error in each of the foregoing cases the following:

{¶ 21} THE TRIAL COURT ERRED IN NOT AWARDING INTEREST AT A CONTRACTED RATE AND PREDATING THE JUDGMENT.

{¶ 22} Within its sole assignment of error, Midwestern argues that the trial court erred in its award of damages. Specifically, Midwestern contends that the trial court should have awarded interest on the damages awards at the rates set forth in the retail installment sales contracts rather than at the 3.0 percent statutory rate. Midwestern further argues the trial court erred in not awarding prejudgment interest at the higher, contractual rate from the time the money in the contract became due and payable.

### A. Rate of Interest

{¶ 23} As Midwestern's argument raises an issue of law with respect to the rate of interest that should have been awarded on its breach of contract claims, our review is de novo. *See Realty Income Corp. v. Garb-Ko, Inc.*, Franklin No. 13AP-35, 2013-Ohio-4932, ¶ 33; *John Soliday Fin. Group, LLC v. Sutzman*, 9th Dist. Wayne No. 08CA0046, 2009-Ohio-

---

10. The trial court mistakenly referred to the date of judgment as January 9, 2014, which was the date of the hearing on Midwestern's motion for judgment on the pleadings. The magistrate's decision was entered on February 7, 2014.

2081, ¶ 6. "A de novo review requires an independent review of the trial court's decision without any deference to the trial court's determination." *Id.*

{¶ 24} R.C. 1343.03(A) establishes interest rates for both prejudgment and post-judgment interest. It provides, in relevant part, as follows:

> when money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate per annum determined pursuant to section 5703.47 of the Revised Code, *unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract.* (Emphasis added).

R.C. 1343.03(A).[11]

{¶ 25} The statutory rate set forth in R.C. 1343.03(A) is a default rate that is applied unless the parties have otherwise agreed on a different rate of interest in writing. *Realty Income Corp.* at ¶ 34. Pursuant to R.C. 1343.03(A), in order for there to be a deviation from the statutory rate of interest, two prerequisites must be met: "(1) there must be a written contract between the parties; and (2) the contract must provide a rate of interest with respect to money that becomes due and payable." *Chappell Door Co. v. Roberts Group, Inc.*, 12th Dist. Fayette No. CA90-09-013, 1991 WL 71980, *4 (May 6, 1991), citing *Hobart Bros. Co. v. Welding Supply Serv., Inc.*, 21 Ohio App.3d 142, 144 (10th Dist.1985). *See also Realty*

---

11. R.C. 1343.02 also addresses the interest rate to be awarded when a contract exists. It provides that "[u]pon all judgments * * * rendered on any bond, bill, note, or other instrument of writing containing stipulations for the payment of interest in accordance with section 1343.01 of the Revised Code, interest shall be computed until payment is made at the rate specified in such instrument." While both R.C. 1343.02 and R.C. 1343.03 state that if there is a written contract specifying the rate of interest, the creditor is entitled to interest at the rate provided in the contract, R.C. 1343.03 has been applied more frequently. *See Kulton v. Hoffer*, 9th Dist. Summit No. 24738, 2009-Ohio-5943, ¶ 7; *First Bank of Ohio v. Wigfield*, 10th Dist. Nos. 07AP-561 and 07AP-562, 2008-Ohio-1278; *K. Ronald Bailey & Assoc. Co., L.P.A. v. McQuaide*, 6th Dist. Erie No. E-02-006, 2002 WL 1292806 (May 24, 2002). Furthermore, where the contract entered into by the parties fails to set forth an agreed rate of interest for money due and payable, R.C. 1343.03 is the applicable statute. *See Kulton* at ¶ 7. As discussed above, R.C. 1343.03 is the applicable statute in the present case as the retail installment sales contracts entered into by Midwestern and appellees failed to stipulate an agreed rate of interest.

*Income Corp*, 2013-Ohio-4932 at ¶ 34. "Once a judgment is rendered, the interest rate in the contract * * * will continue to govern until the amount due is paid." *Id.*, citing *First Bank of Ohio v. Wigfield*, 10th Dist. Franklin Nos. 07AP-561 and 07AP-562, 2008-Ohio-1278, ¶ 20.

{¶ 26} Attached to Midwestern's complaints in the aforementioned cases were copies of the retail installment sales contracts. These contracts provide as follows:

> You, the Buyer (and Co-Buyer, if any) may buy the vehicle below for cash or credit. By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract. You agree to pay the Creditor-Seller (sometimes "we" or "us" in this contract) the Amount Financed and the Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-in-Lending Disclosures below are part of this contract.

Thereafter, the federal truth-in-lending disclosures provide that the "annual percentage rate," or "[t]he cost of your credit as a yearly rate," is a rate in excess of 24 percent.[12] The truth-in-lending disclosures further state the finance charge (or "[t]he dollar amount the credit will cost you"), the amount financed (or "[t]he amount of credit provided to you on your behalf"), the total of payments (or "[t]he amount you will have paid after you have made all payments as scheduled"), and the total sale price (or "[t]he total cost of your purchase on credit, including your down payment"). Following the truth-in-lending disclosures, the payment schedule for the purchase of the vehicle is set forth. The contracts then provide other important terms, such as warranty disclaimers, the buyers' limited right to cancel, how buyers' payments are applied to the loan, the seller's remedies upon default of payment, and that the contracts are governed by federal law and Ohio law.

{¶ 27} Having examined the retail installment sales contracts, we find that the contracts fail to designate a rate of interest with respect to money that becomes due and

---

12. The eight retail installment sales contracts entered into by appellees set forth a truth-in-lending APR ranging from 24.61 percent to 24.89 percent. For ease of discussion, we shall reference all of the APR's set forth in appellees' respective contracts as rates in "excess of 24 percent."

- 15 -

payable. Nowhere within the contracts is an agreed rate of interest set forth. Contrary to Midwestern's argument, the truth-in-lending annual percentage rate ("APR") of 24-plus percent is not a designated rate of interest. The truth-in-lending APR listed in the retail installment sales contracts informed appellees of the cost of their credit as a yearly rate. The APR, therefore, included not only interest but also other finance charges associated with the loan. *See Ohio Neighborhood Fin. Inc. v. Scott*, 139 Ohio St.3d 536, 540, 2014-Ohio-2440, ¶ 14; *Smith v. Anderson*, 801 F.2d 661, 663-664 (4th Cir.1986) (finding that the APR "differs from the general definition of interest rate because it considers, by definition, a broader range of finance charges when determining the total cost of credit as a yearly rate"). *See also* 15 U.S.C. 1605; 15 U.S.C. 1606. Consequently, the truth-in-lending APR is not a rate of interest with respect to money that has become due and payable.

**{¶ 28}** In support of its position that it is entitled to recover interest at a rate in excess of 24 percent, Midwestern cites to *Marion Plaza, Inc. v. D & L Ent., Inc.*, 7th Dist. Mahoning No. 09-MA-207, 2010-Ohio-6267; and *Kulton v. Hoffer*, 9th Dist. Summit No. 24738, 2009-Ohio-5943. In *Marion Plaza*, the Seventh District Court of Appeals modified a damage award in a breach of contract case to allow prejudgment and post-judgment interest at the contracted rate of 18 percent rather than at the statutory interest rate. *Marion Plaza* at ¶ 18. After reviewing the contract in *Marion Plaza*, the Seventh District found that the licensing agreement "unequivocally stipulated that an 18% interest rate would apply to all amounts due and payable." *Id.* at ¶ 12. Similarly, in *Kulton*, the Ninth District Court of Appeals reversed and remanded a damage award in a breach of contract case after concluding that the trial court incorrectly calculated damages. *Kulton*, 2009-Ohio-5943 at ¶ 10. The Ninth District determined that imposition of the default statutory interest rate was improper given the parties' stipulation in a written settlement agreement that interest would accrue at a higher rate. *Id.* at ¶ 9. There, the settlement agreement specifically provided that "in the event the

remainder of the debt is declared to be due, interest shall accrue at the rate of eight percent (8.00%) per annum, computed monthly." *Id.*

{¶ 29} Unlike the contracts in *Marion Plaza* and *Kulton*, the retail installment sales contracts entered into by appellees and Midwestern do not set forth a specific rate of interest that was agreed to by all parties. As there was no "meeting of the minds" or express written statement that interest would accrue on amounts due and payable at a rate higher than the statutory rate set forth in R.C. 1343.03(A), Midwestern is not entitled to recover interest at rates in excess of 24 percent. *See Chappell Door*, 1991 WL 71980 at *4; *Takats v. Groth*, 12th Dist. Butler No. CA93-06-106, 1993 WL 500241, *3 (Dec. 6, 1993). Accordingly, we find that the trial court did not err in awarding interest at the statutory rate of 3.0 percent.

### B. Award of Prejudgment Interest

{¶ 30} "Once a plaintiff receives judgment on a contract claim, the trial court has no discretion but to award prejudgment interest under R.C. 1343.03(A)." *Textiles, Inc. v. Design Wise, Inc.*, 12th Dist. Madison Nos. CA2009-08-015 and CA2009-08-018, 2010-Ohio-1524, ¶ 49. While the language of R.C. 1343.03(A) is mandatory, a trial court retains discretion in determining when money becomes "due and payable." *Id.* at ¶ 50, citing *Hance v. Allstate Ins. Co.*, 12th Dist. Clermont No. CA2008-10-094, 2009-Ohio-2809, ¶ 17. "This court reviews the trial court's determination of when prejudgment interest accrues under an abuse of discretion standard." *Deerfield Twp. v. Mason*, 12th Dist. Warren No. CA2011-12-138, 2013-Ohio-779, ¶ 29. An abuse of discretion constitutes more than an error of law or judgment; it requires a finding that the trial court acted unreasonably, arbitrarily, or unconscionably. *Id.*

{¶ 31} Prejudgment interest acts as compensation and serves to make the aggrieved party whole. *Royal Elect. Constr. Corp. v. Ohio State Univ.*, 73 Ohio St.3d 110, 117 (1995). "[T]o make the aggrieved party whole, the party should be compensated for the lapse of time

between accrual of the claim and judgment." *Id.*

{¶ 32} As we have previously determined that the trial court did not err in awarding damages at the statutory interest rate of 3.0 percent, the question now becomes whether the trial court abused its discretion in determining when prejudgment interest began accruing. In Case Nos. CA2014-02-029, CA2014-02-030, CA2014-02-031, CA2014-02-032, CA2014-03-067, and CA2014-03-068, the trial court awarded interest as of the date of appellees' default on the retail installment sales contracts. We find that the trial court did not abuse its discretion in determining that prejudgment interest, at the statutory rate of 3.0 percent, began accruing on the date of default in these cases.

{¶ 33} However, in Case Nos. CA2014-04-086 and CA2014-04-087, we find that the trial court erred by failing to award prejudgment interest. Although the trial court granted Midwestern judgment on the pleadings in each case, thereby finding that appellees Engle and Combs and Harrison and Vitek had defaulted on the terms of repayment under the retail installment sales contracts as set forth in Midwestern's complaints, the court's entry does not award prejudgment entry from the time of default. Rather, the trial court awarded interest at the time of judgment. Such an award cannot be construed as an award of prejudgment interest. *See Foister v. Lowe*, 12th Dist. Warren Nos. CA97-06-054 and CA97-06-055, 1998 WL 117164, *4-5 (Mar. 16, 1998). As we previously recognized, once a plaintiff receives judgment on a contract claim, the trial court must award prejudgment interest under R.C. 1343.03(A). *Textiles*, 2010-Ohio-1524 at ¶ 12. Because the amount owed under the terms of the retail installment sales contracts became due and payable upon appellees' default, Midwestern was entitled to interest, or compensation, for the lapse of time between the accrual of the claim and the court's award of judgment. *See Royal Elec. Constr.* at 117-118; *Foister v. Lowe*, 12th Dist. Warren Nos. CA97-06-054 and CA97-06-055, 1998 WL 117164, *4-5 (Mar. 16, 1998). We therefore find that the trial court abused its discretion by failing to

award prejudgment interest at the rate of 3.0 percent in Case Nos. CA2014-04-086 and CA2014-04-087 from the time the retail installment sales contract became due and payable.

{¶ 34} Accordingly, for the reasons set forth above, Midwestern's sole assignment of error is overruled in Case Nos. CA2014-02-029, CA2014-02-030, CA2014-02-031, CA2014-02-032, CA2014-03-067, and CA2014-03-068, and is overruled in part and sustained in part in Case Nos. CA2014-04-086 and CA2014-04-087. The judgments in Case Nos. CA2014-04-086 and CA2014-04-087 are reversed and the causes remanded to the trial court for the limited purpose of applying prejudgment interest from the time the retail installment sales contracts become due and payable at the statutory rate of 3.0 percent.

### III. CONCLUSION

{¶ 35} Judgment affirmed in part, reversed in part, and the matter remanded for further proceedings consistent with this Opinion.

RINGLAND, P.J., and PIPER, J., concur.